■ JOSEPH L. TEITLER, Respondent, v ENRIQUETA M. TEITLER, Also Known as CUCA ROMLEY, Also Known as ENRIQUETA GOMEZ-ROIG, et al., Appellants.—Judgment of the Supreme Court, New York County (Jacqueline W. Silbermann, J.), entered on January 5, 1989, which, *inter alia,* dissolved the marriage between the parties, decreed that the marital residence, a brownstone town house, has a fair market value of $1,000,000 and that the appreciation in value of Winter Tree

Graphics, Ltd., defendant's art business, from the date of the marriage to the commencement of the instant action equals $42,100, and equitably distributed 50% of each asset to each of the parties, is unanimously modified on the law, and in the exercise of discretion, to the extent of awarding 75% of the appreciation of defendant's business to her and 25% to plaintiff and, upon the sale of the marital residence to a third party, the proceeds thereof shall be placed in escrow pending a determination by the Supreme Court of each party's proportionate share of the taxes, and otherwise affirmed, without costs or disbursements.

The parties herein were married on March 21, 1978. Plaintiff husband was then a 22-year-old high school graduate without any significant financial assets, while defendant wife, an illegal alien from Spain, was a 43-year-old artist living with her daughter in a duplex apartment at 130 East 82nd Street in Manhattan in which was also located her studio, printshop and gallery business, incorporated as Winter Tree Graphics, Ltd. When the building, a brownstone town house, went on the market, plaintiff, with the assistance and advice of his attorney father, negotiated with the owner's broker for its purchase. After the necessary financing was arranged, the property was acquired in April of 1978, first in the corporate name of Romley East 82nd Street Corporation and then transferred to Winter Tree, a subchapter S corporation, of which defendant is the sole shareholder. During the course of the eight-year childless marriage between plaintiff and defendant, major repairs and renovations were made on the building, and its value increased substantially. According to the Supreme Court, the town house, which was originally obtained for $145,000, is now worth $1,000,000. Plaintiff did much of the requisite manual labor himself and, in addition, he hired and supervised the work performed by electricians and plumbers. He was also responsible for the paperwork and filings mandated by the appropriate housing agencies of the City of New York with respect to the property, collection of rents from the six rental apartments on the premises and personally undertook most of the maintenance of the building. Although the down payment on the house came from moneys supplied by defendant, as well as from borrowed funds, and the repairs and renovations were largely financed by defendant, plaintiff contributed most of the work involved in purchasing, renovating and managing the property. Thus, the Supreme Court appropriately determined that each of the parties is entitled to a 50% distribution of the value of the

town house. Moreover, the evidence submitted to the court supports the valuation of the property at $1,000,000 and, indeed, defendant herself had assigned the same value to the premises when applying to refinance the mortgage (see, Capasso v Capasso, 129 AD2d 267, lv denied 70 NY2d 988).

There is, similarly, no basis to set aside the court's finding that defendant's art business had appreciated in value in the amount of $42,100 during the period of the parties' marriage. The Supreme Court, however, improperly awarded plaintiff a 50% share in the appreciation of the art business. In that regard, it is clear that not only did defendant conceive and establish the business, but she was the creative force behind it. Certainly, her efforts were considerably more instrumental in its operation and success than were the administrative and sales services performed by plaintiff, who was eventually replaced by a part-time employee. Therefore, a 75% distribution in favor of defendant appears to be more equitable than an equal division of the appreciation value of the art business. Finally, although the question of the tax consequences of a possible sale of the 82nd Street property was not raised at trial, both parties submitted posttrial briefs relating to the tax implications of such a sale. Clearly, this is a matter which, if not taken into consideration, would have the effect of inflicting a fundamental injustice upon one of the parties. Therefore, we will reach the issue in our discretion and in order to arrive at an equitable distribution of the marriage's major asset. The town house was purchased for $145,000, and approximately $90,000 was expended for improvements. This basis of $235,000 has been reduced by depreciation taken for more than a decade on the rental portion of the building. The judgment directs that any sale to a third party be for at least $999,999. It is evident that the capital gains tax liability attendant upon a sale of the property is substantial. Under the present circumstances, despite a nominal 50-50 division of the proceeds of such a sale, plaintiff would, in fact, receive a significant amount, tax free. In contrast, defendant's portion would be greatly reduced, if not wiped out entirely, since the judgment herein does not authorize a deduction for taxes, and taxes would have to be paid by the seller of record, Winter Tree Graphics, and thus, defendant herself. The result would scarcely be equitable; the tax liability arising out of a sale to a third party should properly be borne in the same proportion as each party's share of the property. Consequently, in the event of a sale of the building to a third party, the proceeds thereof should be placed in escrow pending a determination by

the Supreme Court of each party's proportionate share of the taxes. Concur—Ross, J. P., Asch, Milonas, Rosenberger and Ellerin, JJ.