OPINION OF THE COURT
 

 Bellacosa, J.
 

 This equitable distribution case, reflecting its unique characteristics of the economic partnership aspect of a 23-year marriage relationship, presents a multifaceted puzzle of issues. The solutions lie in the evidence adduced, in the statutory framework, language and policies, and in their discernment, application and harmonization in the respective levels of judicial review and authority.
 

 
 *42
 
 I.
 

 Plaintiff wife appeals, pursuant to leave granted by this Court, from an order of the Appellate Division, which modified a judgment of Supreme Court, New York County, dissolving the parties’ marriage and distributing property. The wife was granted a divorce on abandonment grounds. Afterwards, a trial was held to determine her maintenance and equitable distribution rights. Both parties appealed conflicting aspects to the Appellate Division. The wife now specifies numerous dissatisfactions about parts of the Appellate Division ruling.
 

 She seeks relief from the Appellate Division determinations (1) that the appreciation in value of the husband’s separate property businesses was not marital property; (2) that his bonus, earned prior to but paid after commencement of marital proceedings, was not marital property; (3) that the trial court had no authority to order the husband to obtain life insurance for her benefit to secure maintenance payments; (4) that the trial court had no authority to impose a lien on the husband’s estate in the event of a shortfall in the ordered life insurance; (5) that maintenance of five-year duration was appropriate in the instant case instead of lifetime maintenance as directed by the trial court; and (6) that tax consequences to the husband of the equitable distribution award should have been considered.
 

 A lead issue for us to decide is whether the husband’s limited involvement during the marriage in businesses that appreciated in value qualified as active participation to transmute the appreciation of that otherwise separate property into marital property subject to equitable distribution. We conclude, as the Supreme Court did, that the record supports the view that the husband’s involvement was sufficient to convert a proportionate share of the appreciated value of these businesses into marital property. We also agree with Supreme Court that the bonus is marital property subject to equitable distribution. Further, we hold that by not considering the predivorce standard of living, the Appellate Division erred both in its articulation and application of the proper standard to be used in determining maintenance awards.
 

 On the other hand, while courts have statutory authority to order a spouse to maintain life insurance for the other spouse’s benefit, we agree with the Appellate Division that such relief is inappropriate in the instant case. Moreover,
 
 *43
 
 there is no general inherent judicial authority to interpose liens against estates as alternative financial or legal security measures. Finally, we conclude that the Appellate Division did not abuse its discretion by considering the tax consequences to the husband and by reducing the wife’s distributive award accordingly.
 

 IL
 

 The parties were married in November 1968. When they divorced, she was 51 and he was 61. Two children were born of the marriage, both emancipated at the time of the divorce. When they married, the wife was 28 and working for an advertising agency. She left this position shortly before the birth of their first child in 1969. With the exception of some freelance work in June 1969, she did not return to work outside the home until May 1980. From May 1980 through 1985, she worked full time at an advertising firm, earning a maximum of $27,500. In 1990, she started a song writing business, from which she earned nothing, but due to which she incurred $5,000 in expenses. During the marriage, she was a traditional homemaker, serving in roles of spouse, parent, housekeeper and hostess. The husband engaged in various business enterprises during the marriage.
 

 When they married, the husband was 38 and worked in a family jewelry business, F. Staal, Inc. He was also a shareholder and director of another family business, Hartog Trading Corporation (Trading). He owns 50% of the stock in F. Staal and Trading, and 25% of the stock of Hartog Foods International, Inc. (Foods), a spin-off company of Trading. He worked long hours at F. Staal six days per week until 1985 and five days a week thereafter. He was director of Trading throughout the marriage and was its secretary/treasurer from 1969. He was a director and secretary of Foods from the time of its incorporation in 1969. However, his brother or others had primary responsibility for the day-to-day management and operation of Trading and Foods.
 

 F. Staal, Trading and Foods each deducted a salary for the husband as a business expense, and he participated in their respective profit-sharing plans. The corporate tax returns of Trading and Foods list him as a part-time employee, and the corporate minutes note his presence at meetings and his power to sign checks. Testimony at trial indicated that the husband and his brother conferred at times regarding busi
 
 *44
 
 ness matters concerning Trading and Foods, the two entities at issue in this case.
 

 On the respective personal health side of their lives, the wife was diagnosed with breast cancer in 1985. She underwent mastectomies in 1985 and 1986, and her health appears stabilized as of the time of the litigation. The husband was more recently diagnosed with prostate cancer.
 

 III
 

 Supreme Court granted the wife a divorce and distributed the marital property. The court outlined various options for the wife, dependent on whether she chose to sell or retain two marital residential properties. Each option also set forth the distributive award to which the wife would be entitled. She ultimately opted to sell both residences, resulting in a distributive award of $1,692,237.09. This aspect is not in dispute on this appeal.
 

 With respect to the rest of the distributive award, the trial court found the following to be marital property: (1) 100% of the increased value of husband’s 50% share in F. Staal ($412,500); (2) 25% of the appreciation of husband’s 50% share of Trading ($575,000); and (3) 25% of the appreciation of husband’s 25% share of Foods ($686,875). The court also declared the husband’s annual bonus to be marital property.
 

 As for maintenance, the court awarded the wife spousal support in the amount of $2,816.66 per month until her death. The court also ordered the husband to maintain a $1 million life insurance policy for his wife’s benefit and provided that in the event the policy was not in effect on his death, the amount of the insurance would constitute a pro rata lien against his estate.
 

 The Appellate Division modified, on the law and on the facts and in the exercise of discretion, to provide: (1) the distributive award to the wife be
 
 reduced
 
 by (i) the share awarded the wife in the appreciated value of Trading and Foods ($630,937.50, representing one half of 25% of the increased value of the husband’s interest in Trading and Foods [she would thus receive nothing in this category]), (ii) the share awarded the wife in the husband’s bonus ($59,998, representing one half of the total bonus paid), and (iii) a portion of the tax liability attributed to the husband resulting from the sale of marital assets; (2) that the distributive award include an additional $197,585, representing one half of the husband’s
 
 *45
 
 Thomas McKinnon brokerage account (not in issue here); (3) that the award of spousal maintenance in the amount of $650 per week be limited to five years from the date of judgment, retroactive to July 13, 1992; and (4) that the provisions directing the husband to maintain a $1 million life insurance policy for the wife’s benefit and establishing a conditional $1 million lien on the husband’s estate should he fail to maintain the policy be deleted. As so modified, the judgment was affirmed.
 

 IV.
 

 The wife asserts that because the husband had some active involvement in Trading and in Foods, then the appreciation in value of those businesses, at least in some degree, is marital property subject to equitable distribution. She argues that the Appellate Division imposed a substantial nexus condition requiring a significant connection between the titled spouse’s activity and the appreciation of the operating business assets. The wife argues that this (1) is contrary to legislative intent, which meant for the term "marital property” to be broadly construed, and (2) is contrary to this Court’s holding and rationale in
 
 Price v Price
 
 (69 NY2d 8), that a titled spouse’s "active” contribution to the separate asset during the marriage transforms at least some portion of the appreciated value into marital property.
 

 The husband counters, claiming that his activities amounted to "paper participation” only, and that this type of pro forma involvement had no actual impact on the appreciation in the value of the businesses. The husband asserts that absent some concrete showing by the wife of how his meager involvement actually benefitted the businesses’ value, the appreciation in those businesses remains separate property in its entirety. In effect, the husband urges that absent a showing by the wife of a definitive and direct nexus between the husband’s activities and the appreciation at issue, the entire amount of the appreciation should be viewed as having been "passively” accumulated and, hence, separate property beyond the reach of the courts’ equitable distribution power
 
 (see,
 
 Domestic Relations Law § 236 [B] [1] [c], [d]; [5] [b], [c], [d];
 
 Price v Price,
 
 69 NY2d 8,
 
 supra).
 

 We conclude that requiring a nontitled spouse to produce a substantial, almost quantifiable, connection between the titled spouse’s efforts and the appreciated value of the asset would be (1) contrary to the letter and spirit of the relevant statutes
 
 *46
 

 (see,
 
 Domestic Relations Law § 236 [B] [1] [c], [d] [3]; [5] [c], [d] [6]); (2) inconsistent with legislative intent (Governor’s Mem approving L 1980, ch 281, reprinted in 1980 McKinney’s Session Laws of NY, at 1863; Sponsor’s Mem L 1980, ch 281, 1980 NY Legis Ann, at 129-130); and (3) at odds with the purport of this Court’s precedents construing the Legislature’s directives
 
 (Price v Price,
 
 69 NY2d 8,
 
 supra).
 
 Thus, we agree with the wife’s argument and the Supreme Court’s resolution of this issue
 
 (see, id.,
 
 at 16-18;
 
 Zelnik v Zelnik,
 
 169 AD2d 317, 330;
 
 but see, Feldman v Feldman,
 
 194 AD2d 207;
 
 Elmaleh v Elmaleh,
 
 184 AD2d 544).
 

 When a nontitled spouse’s claim to appreciation in the other spouse’s separate property is predicated solely on the nontitled spouse’s indirect contributions,
 
 some
 
 nexus between the titled spouse’s active efforts and the appreciation in the separate asset is required
 
 (see, Price v Price,
 
 69 NY2d 8, 17-18,
 
 supra; contra, Robinson v Robinson,
 
 166 AD2d 428, 430,
 
 lv denied
 
 77 NY2d 807). Applying
 
 Price’s
 
 nuanced principles to this case, we hold that the weight of the adduced evidence favors the fact-finding trial court’s conclusion that the titled spouse
 
 actively
 
 participated to some degree regarding the separate nonpassive asset and that the appreciation in the asset is, to that proportionate extent, marital property.
 

 Domestic Relations Law § 236 (B) (1) (d) (3) expressly provides that appreciation in separate property remains separate property,
 
 "except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse”
 
 (emphasis added). Moreover, Domestic Relations Law § 236 (B) (5) (d) (6) explicitly recognizes that indirect contributions of the nontitled spouse (e.g., services as spouse, parent and homemaker, and contributions to the other party’s career or career potential) are relevant in the equitable disposition calculations just as direct contributions are. Thus, to the extent that the appreciated value of separate property is
 
 at all
 
 "aided or facilitated” by the nontitled spouse’s direct or indirect efforts, that part of the appreciation is marital property subject to equitable distribution
 
 (Price v Price,
 
 69 NY2d 8, 18,
 
 supra; see,
 
 Domestic Relations Law § 236 [B] [1] [c]; [5] [c], [d]). Consequently, while
 
 some
 
 connection between the titled spouse’s effort and the appreciation must be discernible from the evidence, neither the statutory language nor its legislative history justifies the Appellate Division’s and the husband’s exacting causation prerequisite.
 

 
 *47
 
 Legislative history of the watershed Equitable Distribution Law (L 1980, ch 281) demonstrates the bill’s salutary purpose —namely, to treat marriage in one respect as an economic partnership and, in so doing, to recognize the direct and indirect contributions of each spouse, including homemakers (Governor’s Mem approving L 1980, ch 281, reprinted in 1980 McKinney’s Session Laws of NY, at 1863; Assembly Mem, 1980 NY Legis Ann, at 129-130;
 
 see also, O’Brien v O’Brien,
 
 66 NY2d 576, 584-585). Adopting the Appellate Division’s view on this issue in this case would undermine this enlightened progress.
 

 We must realistically come to grips with the fact that when the titled spouse has only limited, yet active, involvement concerning a separate asset of nonpassive character, it may be difficult, if not impossible, to link limited, specific efforts to quantifiable, tangible results. The valuation of an asset, such as an ongoing business, may vary due to a combination of and interaction among numerous active and passive forces — activities of workers, decisions of management and operational personnel, advice and activities of consultants, inflation and market forces, among others. Given these complex variables and especially when a party’s active involvement in a business is limited, it would be insuperably difficult to prove a direct causal link between the activity and the resulting appreciation.
 

 The causation requirement urged by the husband would, therefore, result in an all-or-nothing contest, as the Appellate Division ruled, and would defeat a central calibrating feature of
 
 Price
 
 and the Domestic Relations Law. That absolutist approach would often procedurally exempt appreciation from being considered marital property even when the titled spouse’s active efforts substantively contributed to the appreciation to some degree. This would allow the titled spouse a windfall retention and, contrary to legislative intent, would nullify the indirect effort the nontitled spouse contributed to the circumstances, allowing for appreciation to that asset
 
 (see, Price v Price,
 
 69 NY2d 8, 14-15,
 
 supra; Majauskas v Majauskas,
 
 61 NY2d 481, 489, 490). We thus reject this approach and instead give effect to the Legislature’s intent that a nontitled spouse be permitted to share in the "indirect” fruits of his or her labor, even if the connection between the titled spouse’s activity and the appreciation is not established with mathematical, causative or analytical precision
 
 (see,
 
 Domestic Relations Law § 236 [B] [5] [d] [6]).
 

 
 *48
 
 Moreover, our precedents support the analysis and result we adopt today in this respect in this case
 
 (see, Price v Price,
 
 69 NY2d 8,
 
 supra).
 
 In
 
 Price v Price,
 
 this Court set forth the "active/passive” test, which established the guidelines for determining whether the appreciation in a titled spouse’s separate property has been transmuted into marital property based on the indirect contributions of the nontitled spouse (69 NY2d 8,
 
 supra;
 
 Domestic Relations Law § 236 [B] [1] [d] [3]; [5] [d] [6]). Explicitly noting the Legislature’s intent to have the term marital property broadly construed
 
 (Price v Price, supra,
 
 at 15), and emphasizing the economic partnership theory of marriage
 
 (id.,
 
 at 14, 16), we held that the dispositive inquiry of ”[w]hether [indirect] assistance of a nontitled spouse * * * can be said to have contributed 'in part’ to the appreciation of an asset
 
 depends primarily upon the nature of the asset and whether its appreciation was due in some measure to the time and efforts of the titled spouse” (id.,
 
 at 17-18 [emphasis added]). Thus, in
 
 Price,
 
 we required that both the nature of the asset and the efforts of the titled spouse be considered in the inquiry
 
 (id.). Price
 
 is silent, however, as to quantifying the threshold "causal link” necessary to trigger the classification of the appreciation of separate property, in whole or in part, as marital property.
 

 While we articulated the need for some connection and left the calibration of that standard for another day, the inevitable implication of
 
 Price
 
 was rejection of the "all or nothing” approach that would be interposed by adopting a particularized causative nexus requirement. We were careful to note that the totality of the appreciation retained its separate property character only where the appreciation was "not due,
 
 in any part,
 
 to the efforts of the titled spouse,” but, rather, was due in its entirety "to the efforts of others or to unrelated factors”
 
 (id.,
 
 at 18 [emphasis added]). That is not this case.
 

 Elaborating on these principles and remaining true to statutory language and intent, we conclude that where an asset, like an ongoing business, is, by its very nature, nonpassive and sufficient facts exist from which the fact finder may conclude that the titled spouse engaged in active efforts with respect to that asset,
 
 even to a small degree,
 
 then the appreciation in that asset is, to a proportionate degree, marital property. By considering the extent and significance of the titled spouse’s efforts in relation to the active efforts of others and any additional passive or active factors, the fact finder must
 
 *49
 
 then determine what percentage of the total appreciation constitutes marital property subject to equitable distribution
 
 (see,
 
 Domestic Relations Law § 236 [B] [1] [c]; [5] [d] [6];
 
 Price v Price,
 
 69 NY2d 8, 17-18,
 
 supra).
 
 Supreme Court correctly did that here.
 

 Applying these principles to the case at bar, we conclude that the Appellate Division mistakenly undid what Supreme Court wrought. The Appellate Division should not have deemed the total amount of the appreciation in Trading and Foods to be the husband’s separate property. The trial court’s findings, as accepted by the Appellate Division, demonstrate that the husband engaged in limited, active involvement in the two companies. The husband’s activities consisted of (1) attendance at Board meetings; (2) holding officers’ positions within the close corporations; (3) being listed as a salaried employee; (4) discussing and conferring on business matters; (5) signing checks on occasion; and (6) participating in the companies’ profit-sharing plans. While infrequent and perhaps not central to the businesses’ day-to-day operations, these efforts did constitute an "active” involvement and management role. Through the husband’s attendance at Board meetings and business discussions with family members, particularly during times of crisis, a reasonable finder of fact could determine that this active involvement contributed to the appreciated value of the businesses. Thus, the Supreme Court’s findings are supportable, and the Appellate Division’s pinched application of the
 
 Price
 
 test is not.
 

 Accordingly, we reinstate the Supreme Court’s determination that 25% of the appreciated value of the husband’s interests in Trading and in Foods is marital property.
 

 V.
 

 The husband’s bonus, earned during the course of the marriage but paid after commencement of marital dissolution proceedings, is marital property subject to equitable distribution
 
 (see, Majauskas v Majauskas,
 
 61 NY2d 481, 485-486,
 
 supra; Cappiello v Cappiello,
 
 110 AD2d 608, 609,
 
 affd
 
 66 NY2d 107). The Appellate Division rationale and conclusion fail to heed our precedents and the generous reading which the Legislature intended to be accorded the term marital property in this respect
 
 (see, Majauskas v Majauskas, supra; Cappiello v Cappiello, supra; see also,
 
 Governor’s Mem approving L 1980, ch 281, reprinted in 1980 McKinney’s Session Laws of NY, at
 
 *50
 
 1863; Sponsor’s Mem, 1980 NY Legis Ann, at 129-130;
 
 Price v Price,
 
 69 NY2d 8, 16,
 
 supra).
 

 VL
 

 Under Domestic Relations Law § 236 (B) (8) (a), the courts have the general authority to "order a party to purchase, maintain or assign a policy of insurance on the life of either spouse.” The plain language of the statute expressly provides that life insurance may be used as a means to secure maintenance and child support payments, so that dependent spouses and children will be adequately protected. Thus, notwithstanding the proviso that the beneficiary’s interest "shall cease upon the termination of [the payor spouse’s] obligation to provide maintenance” (Domestic Relations Law § 236 [B] [8] [а] ), and despite the fact that responsibility for maintenance payments ceases upon the payor spouse’s death (Domestic Relations Law § 236 [B] [6] [c]), the statute authorizes discretionary security-type financial protection in the form of life insurance. Domestic Relations Law § 236 (B) (8) (a) does not impermissibly conflict with Domestic Relations Law § 236 (B) (б) (c)
 
 (see, Burns v Burns,
 
 84 NY2d 369,
 
 modfg on other grounds
 
 193 AD2d 1104, 1105).
 

 The Appellate Division came to a correct result based on the particular facts and circumstances of this case, although it misstated the general rule and the power of the court. In the instant case, the trial court erred by ordering the husband to obtain a life insurance policy. Due to his serious illness, the husband is uncontestedly uninsurable, and the proof at trial establishes the lack of any extant life insurance available when the relief was directed in the judgment. Consequently, the Appellate Division correctly found an abuse of discretion in the trial court’s ordering the husband to maintain the $1 million policy.
 

 The Appellate Division also correctly held that the courts have no inherent authority to order a lien on a spouse’s estate in lieu of insurance. There is no statutory authority or suggestion in the legislative history that the courts were meant to exercise such broad-reaching power to create a lien on an estate for a payor spouse’s failure to maintain life insurance
 
 (see,
 
 Domestic Relations Law § 236 [B] [8] [a]; Bill Jacket, L 1980, ch 281;
 
 see also, Pajak v Pajak,
 
 56 NY2d 394).
 

 VII.
 

 Consideration of the predivorce standard of living is an essential component of evaluating and properly determining
 
 *51
 
 the duration and amount of the maintenance award to be accorded a spouse
 
 (see,
 
 Domestic Relations Law § 236 ¡B] [6] [a]; Sponsor’s Mem, L 1986, ch 884, 1986 NY Legis Ann, at 356-357). The Appellate Division erred in failing to consider the wife’s predivorce standard of living in determining the propriety of the maintenance award ordered by the trial court
 
 (see,
 
 Domestic Relations Law § 236 [B] [6] [a]; Sponsor’s Mem, L 1986, ch 884,
 
 op. cit.).
 

 Domestic Relations Law § 236, as amended in 1986 (ch 884), directs that when the court is considering an award of maintenance, it must "hav[e] regard for the standard of living of the parties established during the marriage” (Domestic Relations Law § 236 [B] [6] [a]). The 1986 amendment altered the prior law by removing the predivorce standard of living from a lengthy list of enumerated factors and according it separate priority within the primary structure of section 236 (B) (6) (a)
 
 (compare,
 
 L 1980, ch 281,
 
 with
 
 L 1986, ch 884). Legislative history makes clear that the purpose of the amendment was to
 
 ”require[ ]
 
 the court to consider the marital standard of living” in making maintenance awards (Sponsor’s Mem, L 1986, ch 884, 1986 NY Legis Ann, at 356, 357 [emphasis added]).
 

 To be sure, generally the lower courts’ failure to analyze each of the statutory maintenance factors (Domestic Relations Law § 236 [B] [6] [a] [1]-[11]) will not alone warrant appellate alteration of the award
 
 (see, Cappiello v Cappiello,
 
 66 NY2d 107, 110,
 
 supra).
 
 With respect to these enumerated factors, we have held that it suffices for a court to set forth the factors it did consider and the reasons for its decision
 
 (id.).
 
 The "factor” at issue in this case — the predivorce standard of living — has been placed by the Legislature in a markedly distinct category, rendering the general rubric inapplicable.
 

 When the Legislature has acted to achieve a particular objective and has given a clear indication of its intent, we are bound to give effect to that purpose. On the issue of the predivorce standard of living, both the history and plain wording of the statute unequivocally demonstrate the Legislature’s intention that the predivorce standard of living be a mandatory factor for the court’s consideration in determining the amount and the duration of maintenance awards
 
 (see,
 
 Domestic Relations Law § 236 [B] [6] [a]; Sponsor’s Mem, L 1986, ch 884,
 
 op. cit.).
 

 
 *52
 
 Additionally, the Appellate Division’s assertion of the wife’s ability to become self-supporting with respect to
 
 some
 
 standard of living (194 AD2d 286, 295) in no way (1) obviates the need for the court to consider the predivorce standard of living; and (2) certainly does not create a per se bar to lifetime maintenance. Correspondingly, a predivorce "high life” standard of living guarantees no per se entitlement to an award of lifetime maintenance. The lower courts must consider the payee spouse’s reasonable needs and predivorce standard of living in the context of the other enumerated statutory factors, and then, in their discretion, fashion a fair and equitable maintenance award accordingly
 
 (see,
 
 Domestic Relations Law § 236 [B] [6] [a] [1]-[11]). That is precisely what Supreme Court did, and the Appellate Division’s significant alteration of that award for the reason it advanced is not warranted. We therefore modify in this respect as well and reinstate the trial court’s determination awarding lifetime maintenance in the amount of $2,816 per month.
 

 VIII.
 

 Finally, we are satisfied that the Appellate Division acted properly in considering the tax consequences to the husband and reducing plaintiff wife’s distributive award by her equitable share of the tax liability
 
 (see, Majauskas v Majauskas,
 
 61 NY2d 481, 493-494,
 
 supra).
 
 Given the nonliquid nature of the assets, the Appellate Division did not abuse its discretion in making the wife responsible for an equitable share of the tax consequences
 
 (see, id.;
 
 Domestic Relations Law § 236 [B] [5] [d] [10];
 
 see also, De La Torre v De La Torre,
 
 183 AD2d 744;
 
 Teitler v Teitler,
 
 156 AD2d 314,
 
 appeal dismissed 75
 
 NY2d 963).
 

 Accordingly, the order of the Appellate Division should be modified, without costs, and the judgment of Supreme Court should be reinstated to the extent indicated in accordance with this opinion and, as so modified, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.