■ MARGUERITE J. COWLES, Respondent-Appellant, v ROBERT H. STAHMER, Appellant-Respondent. MARGUERITE J. COWLES, Respondent, v ROBERT H. STAHMER, Appellant. [679 NYS2d 607] —Judgment, Supreme Court, New York County (Fern Fisher-Brandveen, J.), entered September 12, 1997, which, *inter alia*, awarded plaintiff equitable distribution in the total amount of $1,011,116, $4,500 per month maintenance until she reaches the age of 65, and $115,000 in counsel fees, and which directed defendant to pay $91,377 in retroactive pendente lite relief, modified, on the law and the facts, to the extent of reducing the equitable distribution award by $86,900 to $924,216, vacating that part of the judgment directing defendant to pay $91,377 in retroactive pendente lite relief and directing instead

that defendant's retroactive maintenance obligation be computed on the basis of the $4,500 monthly maintenance obligation set forth in the judgment, and to the further extent of awarding plaintiff prejudgment interest from the date of valuation of the marital estate, and otherwise affirmed, without costs.

Order, same court and Justice, entered February 20, 1998, which upwardly modified plaintiff's maintenance award from $4,500 to $6,000 pending defendant's appeal from the September 12, 1997 divorce judgment, and awarded plaintiff $35,000 in appellate counsel fees, unanimously modified, on the law and the facts, to the extent of vacating that part of the order awarding counsel fees, and otherwise affirmed, without costs.

With respect to the determination of the equitable distribution award, the IAS Court appropriately included as marital property 25% of the appreciation of defendant's separate assets since the appreciation of those assets (primarily securities accounts) during the marriage was at least partially attributable to defendant's efforts (*see*, *Hartog v Hartog*, 85 NY2d 36, 46-49). Once the fact finder concludes that the titled spouse engaged in active efforts with respect to his or her separate nonpassive assets "*even to a small degree*" (*supra*, at 48), then the appreciation in that asset is, to a proportionate degree, marital property. "By considering the extent and significance of the titled spouse's efforts in relation to the active efforts of others and any additional passive or active factors, the fact finder must then determine what percentage of the total appreciation constitutes marital property subject to equitable distribution" (*supra*, at 48-49 [citations omitted]). Although we agree with nearly all of the IAS Court's remaining findings in connection with the equitable distribution award, certain modifications are in order. First, the award to plaintiff should be reduced by $86,900, since plaintiff was only entitled to half of the $173,800 of distributable funds in defendant's SGI receivables account; the IAS Court, by reason, no doubt, of inadvertent miscalculation, awarded plaintiff the entire $173,800. Second, the judgment should be amended to entitle plaintiff to pre-judgment interest from the date of the marital estate's valuation (*see*, *Maharam v Maharam*, 245 AD2d 94; *see also*, *Selinger v Selinger*, 232 AD2d 471, *lv denied* 90 NY2d 842).

Regarding spousal maintenance, we find the judgment's award to plaintiff of $4,500 per month until she reaches the age of 65 reasonable when considered in light of the relevant factors set forth in Domestic Relations Law § 236 (B) (6). However, the IAS Court's upward modification of that award to

$7,036 per month for the purpose of calculating defendant's retroactive pendente lite maintenance obligation was improper, given plaintiff's posttrial request that the permanent maintenance awarded (i.e., $4,500 per month) be made retroactive to October 14, 1993.

Finally, the award to plaintiff of legal fees in the amount of $115,000 was sufficient to enable her to litigate the action (*see*, *DeCabrera v Cabrera-Rosete*, 70 NY2d 879).

Turning now to the appeal from the order of February 20, 1998, postdating the judgment, the IAS Court's upward modification of plaintiff's maintenance award pending the instant appeal from the judgment was, under the circumstances, an appropriate exercise of discretion. In determining plaintiff's permanent monthly maintenance entitlement, the IAS Court had supposed that plaintiff would, in addition to monthly maintenance payments, have simultaneous access to a large equitable distribution award and the income therefrom. When it became apparent by reason of defendant's appeal from the divorce judgment and the stay obtained by him in connection therewith, that plaintiff would not, in fact, gain access to the equitable distribution award until defendant's appeal of the divorce judgment had run its course and, accordingly, that there would be a significant period during which plaintiff would not enjoy the level of economic security contemplated by the judgment, the court properly increased the monthly maintenance on an interim basis. We modify the appealed order only to the extent of vacating its award of $35,000 in appellate counsel fees to plaintiff. The affidavit submitted by plaintiff's attorney in support of the fee request conclusorily asserting that plaintiff would incur fees of $100,000 in responding to the appeal was insufficient to justify even the $35,000 award made (*see*, *Aldin v Aldin*, 149 AD2d 348). Plaintiff may reapply for an award of appellate attorney's fees once counsel is able to detail the services for which such fees are sought.

We have considered the parties' remaining arguments for affirmative relief and find them to be without merit. Concur— Rubin, Williams and Andrias, JJ.

Sullivan, J. P., dissents in part in a Memorandum as follows: I disagree with the majority's conclusion that the IAS Court correctly attributed only 25% of the appreciation of the husband's separate property, i.e., his investment accounts, to the marital estate. After determining, as a factual matter, that the husband's efforts and actions during the years of the marriage affected the fluctuation in value of his investments, the entire resultant appreciation should have been attributed to

the marital estate. Since the trial court concluded, and the majority does not disagree, that the wife was an equal partner in the marriage and entitled to one-half of the marital estate, she should receive her full 50% share of that appreciation.

It is well settled that the appreciation in value of separate property resulting from the contributions, either direct or indirect, of either or both spouses is marital property. (*See, e.g., Price v Price*, 69 NY2d 8; *Rando-Quillin v Quillin*, 195 AD2d 636; *Greenwald v Greenwald*, 164 AD2d 706, *lv denied* 78 NY2d 855.) In *Price*, the Court held that the determination of whether the appreciation of separate property constitutes marital property depends primarily upon the nature of the asset and whether the appreciation was due in "some measure" to the time and effort of the titled spouse. (69 NY2d, *supra*, at 18.) The Court of Appeals reaffirmed this principle in *Hartog v Hartog* (85 NY2d 36).

After extensive testimony, the trial court concluded, quite properly, that the husband's intense, "macro" management of his investments and his decisions throughout the marriage affected the value of his investment accounts. This management included the monthly, ritualistic review of his account statements and bookkeeping entries reflecting gains and losses as well as his calculation of the value of his investments in "hedge" funds. He routinely performed comparative analysis to track the growth of his assets, thereby enabling him to make numerous investment allocation decisions. His decisions were based on his conversations with others and market information learned in the course of his job as a specialist on the floor of the New York Stock Exchange, his operation of a wholly owned securities tracking corporation and his daily reading of the Wall Street Journal. The husband's activity is reflected not only by the decisions he made but as well by the investment choices he avoided. And, even though the husband acted through an advisor, the evidence discloses that the investment decisions were the product of his labors and not mere random fluctuations. In any event, "it is of no significance that the financial decisions [are] made exclusively by the titled spouse's financial advisor" (*Greenwald v Greenwald*, 164 AD2d 706, 718, *supra*) in determining whether the appreciation in the husband's investment accounts was the result of his active contribution.

Thus, while the trial court properly determined that the husband's activities affected the fluctuation in value of his separate property, it arbitrarily decided that his active involvement in the management of his investment accounts was

responsible for only 25% of the appreciation earned during the marriage. Nothing in the record supports such a result, which appears to be based on a misreading of *Hartog* (*supra*), where the husband's active involvement in the appreciation of separate property, i.e., several family owned businesses, was limited to a participation in which he acted with respect to certain matters involving those businesses, as part of a consortium with other board members or corporate officers. In essence, unlike here, the active involvement that brought about the appreciation was not his alone.

Having correctly found the husband's involvement in the management of his investment accounts to be active, the trial court was obliged to include in the marital estate the entirety of the appreciation of those accounts during the marriage.

Accordingly, I would modify the wife's distributive award to include 50% of the appreciation of the husband's investment accounts during the marriage.