■ JOHN P. LOMBARDO, Respondent, v FLORENCE F. LOMBARDO, Appellant. [680 NYS2d 270] —Carpinello, J. Appeal from a judgment from the Supreme Court (Rumsey, J.) ordering, *inter alia*, equitable distribution of the parties' marital property, entered April 16, 1997 in Cortland County, upon a decision of the court.

The parties to this action were married in 1974 and have no children together. Plaintiff (born in 1943) is a tenured college professor with a Ph.D. in psychology who also maintains a part-time private practice. He was employed as an assistant professor of psychology at the time of the marriage and became licensed to practice shortly thereafter. His income from these sources steadily increased over the years with his 1995 income totaling $117,878. Accordingly, the parties were able to lead a comfortable, although not opulent, lifestyle which included the purchase of a 16-acre farm and yearly vacations. Although plaintiff takes medication for a blood pressure condition diagnosed in the 1970s, his health was characterized as good. Defendant (born in 1940) has a high school education and was employed as a dental assistant until shortly after the marriage, at which time she quit to become a full-time homemaker. Defendant has not been formally employed since that time.

Plaintiff commenced this action for divorce in 1994 alleging cruel and inhuman treatment. At the time of the subject proceeding, defendant was under treatment with a psychiatrist for depression and insomnia for which she was taking medication. Due to defendant's fragile mental state, a guardian ad

litem was appointed to protect her interests. Prior to trial, the parties entered into a stipulation agreeing on the value and distribution of the $579,465 marital estate, exclusive of plaintiff's practice.[1] The parties signed an additional stipulation in which they agreed that plaintiff would pay defendant a distributive award of $18,000 at a rate of $500 a month for 36 months, representing defendant's share of the professional practice.

The trial was restricted to the issues of maintenance and responsibility for payment of, *inter alia*, appraisal and counsel fees and defendant's health insurance. At the conclusion of proof, plaintiff was ordered to pay nondurational spousal maintenance of $1,500 per month until September 2002 and $800 per month thereafter, terminating upon the death of either party or upon defendant's remarriage. Plaintiff was also ordered to pay maintenance arrears in the amount of $11,800 in installments of not less than $200 per month. Defendant was directed to pay her own health insurance although plaintiff was to cooperate with his employer in ensuring that she pay a reduced rate of $200 per month for 36 months pursuant to the employer's COBRA plan (*see, Sally v Sally*, 225 AD2d 816). Defendant appeals.

Defendant argues that the maintenance award was inadequate and does not correspond to the standard of living to which she had become accustomed during the marriage (*see generally, Hartog v Hartog*, 85 NY2d 36, 50-51). "As a general rule, the amount and duration of maintenance are matters committed to the sound discretion of the trial court" (*Boughton v Boughton*, 239 AD2d 935). With respect to the subject award, we note that Supreme Court gave consideration to each of the statutory factors, including the marital standard of living as well as the parties' income and future earning capacity (*see,* Domestic Relations Law § 236 [B] [6]) and "rendered a determination based upon its exercise of discretion" (*Grenier v Grenier*, 210 AD2d 557, 558).

In doing so, Supreme Court found that plaintiff's monthly earnings from his employment between 1992 and 1995 averaged $6,250 after Federal and State taxes. His monthly expen-

---

1. Defendant's share included the proceeds from the sale of the marital residence ($68,701), a Dean Witter Keough account ($31,643), a Fleet IRA ($5,566) and one half of the value of plaintiff's retirement ($165,937). In addition, defendant received a car valued at $4,000 and two annuities worth $4,005. Plaintiff's share of the marital estate included a checking account from his psychology practice ($21,191), a Fleet Keogh account ($68,936), a savings account ($5,486), three vehicles worth approximately $14,000 and the one-half interest in his retirement account ($165,937).

ses were approximately $5,025, exclusive of maintenance payments (but including $550 for vacations and dining out), leaving a surplus of $1,225 per month. In contrast, the court found that defendant detailed expenses in the amount of approximately $2,000 per month "[w]ithout provision for costs for health insurance, travel, and purchases commensurate with her predivorce standard of living". The court noted that, along with the maintenance from plaintiff, defendant would receive approximately $1,100 per month from her half of plaintiff's pension, approximately $400 per month in interest earnings from the proceeds of her share of the equitable distribution, which would result in monthly income of $3,000 to pay her basic monthly expenses, travel and insurance costs[2] until she attains the age of 62 and $2,300 per month thereafter.

With respect to the award of $1,500 per month nondurational maintenance, we find that Supreme Court did not abuse its discretion as this was a long-term marriage, the amount is within plaintiff's means[3] and reasonably provides defendant with enough income to not only meet her needs and pay for increasing health costs (*see generally*, *Malamut v Malamut*, 133 AD2d 101), but also retain a semblance of her predivorce standard of living.

Defendant's principal objection to the nondurational award of maintenance is the $700 monthly reduction when defendant reaches the age of 62. Supreme Court found that this reduction was proper because defendant would become eligible for Social Security payments at that time based upon "her husband's Social Security contributions". However, under Federal law, because plaintiff is almost three years younger than defendant and will not be 62 years of age in October 2002 (when defendant turns 62), defendant will *not* be able to draw benefits based on plaintiff's earnings until plaintiff attains the age of 62 years (*see*, 20 CFR 404.331). Since Supreme Court was clearly concerned that defendant receive sufficient funds to meet her needs and health care costs, we conclude that the reduction in plaintiff's nondurational maintenance obligation be postponed until immediately after plaintiff's 62nd birthday, which we

**2.** We note that for a limited period after the divorce, defendant is also to receive the $200 per month maintenance arrearage installments and the $500 per month equitable distribution installments.

**3.** Supreme Court noted that there is no credible evidence that plaintiff's income could not remain stable for the foreseeable future and his expenses could decrease in view of the high amount spent on vacations and dining out.

note is also close to the time defendant would normally qualify for Medicare benefits (see, 42 USC § 1395c).[4]

Cardona, P. J., Peters, Spain and Graffeo, JJ., concur. Ordered that the judgment is modified, on the facts, without costs, by changing the date that defendant will begin receiving a reduced monthly maintenance amount from "October 15, 2002" to "April 15, 2005", and, as so modified, affirmed.

---

4. Although Supreme Court did mention the possibility that defendant might be capable of performing some entry-level work by the time she is 62, there is little support in the record for this finding. Even the clinical psychologist who examined defendant at plaintiff's request indicated in his report that he was "pessimistic about [defendant's] ability to work successfully in the future * * * [and] [t]he chronicity of her disorder strongly suggests a poor prognosis for full recovery".