[789 NYS2d 13]

Cordula Bartha, Respondent-Appellant, v Nicholas Bartha, Appellant-Respondent.

First Department, January 27, 2005

APPEARANCES OF COUNSEL

*Ira E. Garr, P.C.*, New York City (*Jane R. Slavin* and *Ira E. Garr* of counsel), for appellant-respondent.

*Polly N. Passonneau, P.C.*, New York City (*Donna E. Bennick* and *Polly N. Passonneau* of counsel), respondent-appellant.

**OPINION OF THE COURT**

Saxe, J.

The determination of equitable distribution made by the Special Referee and incorporated in the court's judgment is both inequitable and unsupported by the record in numerous respects; in particular, the conclusion that plaintiff had no right to any portion of the marital residence or its appreciation in value was contrary to fundamental principles of equitable distribution. Reversal of the financial provisions of the judgment is therefore necessary.

Plaintiff Cordula Bartha, who was born in the Netherlands, emigrated with her family to Italy in 1960. She earned a Ph.D. in German literature from the University of Rome, after which she found employment as an assistant to a publisher. In 1973, she met defendant Nicholas Bartha, a medical student of Romanian and Hungarian heritage. The parties lived together in Rome until defendant graduated from medical school in April 1974, at which time they relocated to the United States and moved in with defendant's parents in a large house owned by

defendant and his mother in Rego Park, New York. While defendant studied to pass the examination required of graduates of foreign medical schools, plaintiff worked in the cultural section of the Netherlands Consulate.

In 1976, defendant passed the test that entitled him to practice medicine in the United States, and began an internship at Elmhurst General Hospital in Queens, New York. At about the same time, plaintiff learned that she was pregnant, and the parties married on January 10, 1977. The couple's two children, born, respectively, on August 5, 1977 and December 11, 1978, are now adults.

Although plaintiff continued to work until shortly before their first child was born, she subsequently remained at home with the children until the youngest was approximately 11 years old. Plaintiff returned to work at the Consulate on a part-time basis in 1989, and resumed full-time status there in 1994. In the meantime, defendant completed his internship and residency, and from 1979 until the present has worked as an emergency room physician.

The family, along with defendant's parents, moved to Manhattan in 1986, to a townhouse located on East 62nd Street, which was purchased in 1980 for $395,000, with cash totaling $199,699 obtained from a variety of sources, including a check from defendant's parents and a payment of separate funds belonging to plaintiff; the seller took back a mortgage for the remainder. Once the renovations on the building were completed, this townhouse contained the duplex apartment in which the parties resided, another apartment for defendant's parents, a rental apartment, and a physician's office unit on the first floor. Title to the property was placed in the name of defendant's parents at the time of the purchase; subsequently, it was put jointly in defendant's and his mother's name. Although the parties disagree as to the source of the mortgage payments between 1980 and 1985, it is undisputed that by 1988 the mortgage payments were made from the parties' joint account, as were the costs of the extensive renovations made on the property prior to their taking residence.

In October 2001, plaintiff wife vacated the marital residence and commenced this action for divorce.

After a fault trial, a divorce was granted in favor of plaintiff. The economic issues were referred to a Special Referee to hear and determine.

The Referee found that the townhouse on East 62nd Street was not marital property, but was in part the separate property of defendant and in part belonged to the parties' children. It was noted that defendant obtained title to 50% of the marital residence as a gift from his father and another 25% as an inheritance from his mother, while the remaining 25% had been willed by his mother to the children of the marriage.

The Referee then found that plaintiff was entitled to a distributive award, calculated to include (1) half the money the marital estate would have received had they rented out the apartment supplied to defendant's parents (determined to be $400,000), (2) half the income lost to plaintiff because she stayed home instead of working while the parties' children were young (determined to be $550,000), (3) half of the $1,112,467 in marital funds which the couple put into the marital residence, and (4) the $196,500 in separate property which plaintiff contributed over the years to the marital residence. The total distributive award thus came to a total of $1,227,733.50.

The Referee also directed defendant to pay plaintiff maintenance of $2,000 per month for three years, and denied plaintiff an award of counsel fees.

■ We affirm the determination awarding a divorce to plaintiff on grounds of cruel and inhuman treatment. Plaintiff's proof, when viewed cumulatively, established by a preponderance of the credible evidence that defendant had engaged in a course of conduct which was harmful to the plaintiff's physical and mental health, thus rendering cohabitation unsafe or improper (Domestic Relations Law § 170 [1]).

This was not a case of ordinary marital dissatisfaction or even "riotous quarrels" as defendant suggests. Defendant intentionally traumatized plaintiff, a woman of Jewish origin born in Nazi-occupied Holland, with swastika-adorned articles and notes affixed around their home, and became enraged when she removed them. He ignored her need for support and assistance while she was undergoing surgery and treatment for breast cancer (see Siczewicz v Siczewicz, 92 AD2d 915, 916 [1983], appeal dismissed 59 NY2d 968 [1983]). He systematically cut off her access to marital funds and credit as a means of psychological abuse. Even plaintiff's assertion that defendant completely ceased speaking to her is not benign, but must be understood in the context of the prior years' verbal abuse.

Physical violence is not a prerequisite for a showing that plaintiff's physical or mental well-being rendered it unsafe or

improper for her to continue cohabiting with defendant as required by Domestic Relations Law § 170 (1) (*see Hessen v Hessen*, 33 NY2d 406, 410 [1974]; *Pfoltzer v Morris-Pfoltzer*, 9 AD3d 615, 616-617 [2004]). Nor did plaintiff need an expert to prove that defendant's actions had the claimed effect on her mental condition (*see Levine v Levine*, 2 AD3d 498, 500 [2003]), particularly in view of her explanation that she is the type of person who finds it difficult to consider seeking psychological treatment.

However, the Referee's determination of the economic issues must be rejected.

■ With regard to the Manhattan townhouse on East 62nd Street, which was purchased in 1980 for $395,000, and was valued by the neutral appraiser in June of 2002 at $5 million, it was error to accept at face value the claim that initially placing the townhouse in the names of defendant's parents, and defendant's subsequently holding joint title with his mother, rendered the property nonmarital.

It is true that it was defendant's parents who took title to the townhouse when it was purchased in 1980, and that defendant's father thereafter purported to gift his half of the house to defendant, while the other half remained in his mother's name, until at her death in 1997, when defendant inherited 50% of her interest in the property, with the remainder willed to her granddaughters, the parties' children. However, the names in whom title was placed does not end the analysis, especially in circumstances such as these.

It is central to the Equitable Distribution Law that the term "marital property" includes property acquired by either spouse during the marriage "regardless of the form in which title is held" (Domestic Relations Law § 236 [B] [1] [c]). That one of the spouses acquired title to property jointly with another relative would not necessarily interfere with its being considered marital, at least to the extent of the spouse's established interest (*see Antenucci v Antenucci*, 193 AD2d 948 [1993]). Moreover, in this instance, the manner in which defendant's parents initially obtained title, and defendant then obtained title from his parents, supports the claim that the townhouse was truly the marital property of these parties, at least in part, from the outset, and that any additional interest that defendant acquired from his parents subsequently might similarly be considered marital property as well.

It is undisputed that $45,095 of the $199,699 cash used for the purchase of the townhouse came from plaintiff's separate

property. Moreover, while $114,369 of the cash down payment came from a check from defendant's parents' account, in the context of the probate of his mother's estate, defendant took the position that at least $60,000 of that payment belonged to him and constituted marital assets. Indeed, that defendant considered the funds held in his parents' names to belong in part to himself and his wife was illuminated by the manner in which he and his family handled their finances generally. For instance, while defendant's mother alone received the rents on the Rego Park building that she and defendant had purchased jointly before the marriage, the building's expenses were paid by plaintiff and defendant, from marital earnings. Indeed, in the probate of his mother's estate, in which defendant successfully defended a challenge by his nephews to his right to inherit his mother's interest in the townhouse, defendant asserted that he and his parents had so thoroughly commingled their assets that while he had, technically, inherited property from his mother, the inheritance actually amounted to a repayment to him of financial loans that he and his wife had made to his mother over the course of many years.

There is a "presumption in favor of marital property, premised on the contemporary view of marriage as an economic partnership, crediting each party's contributions, whether monetary or not, to the growth and value of the marriage" (*DeJesus v DeJesus*, 90 NY2d 643, 648 [1997]). The term marital property must be broadly construed in order to give effect to the economic partnership concept (*Price v Price*, 69 NY2d 8, 11 [1986]), and assure that "to the extent that the appreciated value of separate property is *at all* 'aided or facilitated' by the nontitled spouse's direct or indirect efforts, that part of the appreciation is marital property subject to equitable distribution" (*Hartog v Hartog*, 85 NY2d 36, 46 [1995]).

To the extent defendant establishes that a portion of the down payment for the Manhattan townhouse was from funds of his parents which had not been intermingled with marital funds, or from his own separate property, he is entitled to a credit for that contribution; but, otherwise, the property, or at least the 75% interest therein currently held in defendant's name, is marital property* (*see Heine v Heine*, 176 AD2d 77, 84 [1992], *lv denied* 80 NY2d 753 [1992]). The appreciation of the value of

---

* While plaintiff challenges the authority of defendant's mother to bequeath 25% of the house to her granddaughters, she nevertheless does not want to challenge her daughters' ownership rights.

the house, from $395,000 to $5 million, was unrelated to the down payments, but very much related to the complete gutting and renovation which was largely overseen by plaintiff, and paid for out of the parties' marital funds (*id.*). Furthermore, the mortgage payments were made entirely from marital funds, at least from 1988 on, and possibly during the earlier years as well.

As to the distributive award that the court granted to plaintiff, both parties agree that there is neither support nor sufficient explanation of how the Referee calculated the amounts of $400,000 for loss of rental income and $550,000 for plaintiff's loss of employment income. Even if we agreed with the characterization of the marital residence as defendant's separate property, a remand would be necessary on this basis in any event.

The need for reassessment of the equitable distribution award also necessitates reassessment of the court's maintenance award to plaintiff. We note, however, that the record fails to disclose how a maintenance award of $2,000 per month for three years will enable plaintiff, who currently lives in a small apartment in Washington Heights with her two adult daughters, to retain her predivorce standard of living (*see Hartog v Hartog*, 85 NY2d at 50-52; *Summer v Summer*, 85 NY2d 1014 [1995]). Finally, the question of whether or not plaintiff is entitled to an award of legal fees in connection with this matrimonial proceeding must also be reassessed in accordance with the final equitable distribution determination.

Accordingly, the judgment of divorce of the Supreme Court, New York County (Joan B. Lobis, J.), entered May 9, 2003, which, inter alia, granted plaintiff a divorce, provided for a distributive award to the wife, awarded her maintenance in the sum of $2,000 per month for a period of three years, and denied her application for attorney's fees, should be modified, on the law, so as to vacate the provisions regarding equitable distribution, maintenance and counsel fees, and the matter remanded for a new fact-finding hearing and determination of those issues in accordance herewith, and otherwise affirmed, without costs.

BUCKLEY, P.J., TOM, ANDRIAS and MARLOW, JJ., concur.

Judgment of divorce, Supreme Court, New York County, entered May 9, 2003, modified, on the law, so as to vacate the

provisions regarding equitable distribution, maintenance and counsel fees, and the matter remanded for a new fact-finding hearing and determination of those issues in accordance herewith, and otherwise affirmed, without costs.