[886 NYS2d 722]

KEVIN HOWE, Appellant-Respondent, v LUCILLE HOWE, Respondent-Appellant.

Second Department, September 29, 2009

### APPEARANCES OF COUNSEL

*Barbara J. Strauss*, Goshen, for appellant-respondent.

*Vergilis, Stenger, Roberts & Davis, LLP*, Wappingers Falls (*Thomas R. Davis* of counsel), for respondent-appellant.

### OPINION OF THE COURT

SPOLZINO, J.P.

On this appeal and cross appeal, the parties raise, principally, two significant issues related to the equitable distribution of the marital estate. The plaintiff asks us to determine that a portion of his New York City Fire Department disability pension is his separate property, despite the lack of evidence in the record by which the disability and nondisability portions of the pension can be distinguished. On the cross appeal, the defendant asks us to hold that the portion of the plaintiff's September 11th Victim Compensation Fund award that is designated as compensation for economic loss does not constitute "compensa-

tion for personal injuries" within the meaning of Domestic Relations Law § 236 (B) (1) (d) (2) and is, therefore, marital property.

We conclude that, in the circumstances presented here, the disability portion of the plaintiff's pension and, consequently, his separate property interest in that pension, can be determined by the appropriate pension administrator pursuant to a properly drawn order. Therefore, we modify the judgment accordingly. As to the cross appeal, the legislative history of the Equitable Distribution Law compels the conclusion that even so much of the plaintiff's September 11th Victim Compensation Fund award as is designated as compensation for economic loss is "compensation for personal injuries" within the meaning of Domestic Relations Law § 236 (B) (1) (d) (2), and therefore the separate property of the plaintiff.

## I

The plaintiff became a New York City firefighter soon after the parties were married, and remained in that employment until approximately 16 months prior to the commencement of this action. He was disabled as a result of his service during the period immediately following September 11, 2001, and retired with a disability pension. The Supreme Court, reasoning that the plaintiff had failed to satisfy his burden of establishing the separate nature of the pension, found the entire pension to be a part of the marital estate and awarded the defendant "her *Majauskas*" share (*see Majauskas v Majauskas*, 61 NY2d 481, 490 [1984]). The plaintiff argues that the lack of expert testimony or evidence in the record by which the nondisability portion of the pension can be distinguished from the disability portion is not fatal to his separate property claim, since that distinction can be made by the pension administrator in the same manner as it makes the familiar calculation of the marital pension share under *Majauskas*.

The manner in which disability pensions are treated for equitable distribution purposes is well established. "[P]ension benefits or vested rights to those benefits, except to the extent that they are earned or acquired before marriage or after [the] commencement of a matrimonial action, constitute marital property" (*Dolan v Dolan*, 78 NY2d 463, 466 [1991]; citing *Majauskas v Majauskas*, 61 NY2d 481, 490 [1984]). Thus, "to the extent that the disability pension represents deferred compensation, it is subject to equitable distribution" (*Mylett v Mylett*, 163 AD2d

463, 465 [1990]; *see Link v Link,* 304 AD2d 800, 801 [2003]; *Beshara v Beshara,* 281 AD2d 577, 578 [2001]). However, "[t]o the extent that a disability pension constitutes compensation for personal injuries, that compensation is 'separate property' which is not subject to equitable distribution" (*Mylett v Mylett,* 163 AD2d at 464-465; *see Link v Link,* 304 AD2d at 801; *Beshara v Beshara,* 281 AD2d at 578; Domestic Relations Law § 236 [B] [5] [b]).

> "[T]he burden of distinguishing the marital property portion of a disability pension from the separate property portion has been placed on the recipient of the pension . . . who is resisting equitable distribution . . . In other words, until the contrary is demonstrated, the presumption is that the entire disability pension is marital property" (*Palazzolo v Palazzolo,* 242 AD2d 688, 689 [1997] [citations omitted]; *see Pulaski v Pulaski,* 22 AD3d 820, 821 [2005]; *Ferrugiari v Ferrugiari,* 226 AD2d 498 [1996]).

Despite the clarity of the language by which we have imposed this burden, however, our interest in the full and just distribution of the marital estate has tempered the harshness of its application where the evidence is weak but some other method of defining the disability portion of the pension is available. In *Carney v Carney* (236 AD2d 574 [1997]), for example, we affirmed, as within the discretion of the Supreme Court, an order reopening the trial to permit the police officer-husband to introduce the evidence necessary to establish the separate portion of his disability pension. We did so based upon "the court's implicit conclusion that the deficiency of proof on this issue at the trial deprived the defendant of substantial justice" (*Carney v Carney,* 236 AD2d at 576). In a similar case, *McNelis v McNelis* (6 AD3d 673 [2004]), we found the defendant husband's testimony to be sufficient, without more, to reverse a determination that the defendant's firefighter pension was entirely marital property. Similarly, where the issue has arisen posttrial, and the record has been insufficient to provide accurately for the proper division of the pension into disability and nondisability portions, we have remitted the matter for a hearing (*see Berardi v Berardi,* 54 AD3d 982 [2008]; *Link v Link,* 304 AD2d 800 [2003]).

These decisions reflect an appropriate willingness to provide for the proper distribution of a disability pension where it is possible to do so, even where the record may technically be

lacking. It is an approach that also has been taken by our colleagues in the Appellate Division, Third Department (*see Nichols v Nichols*, 19 AD3d 775 [2005]). Although this appeal challenges the limits of such an approach, we conclude that, at least on the simple facts presented here, it is possible for the separate portion of the plaintiff's disability pension to be determined, despite the limited evidence with respect to that issue in the record.

In *Palazzolo v Palazzolo* (242 AD2d at 689), we defined the methodology by which the disability and nondisability portions of a public employee's pension are defined by approving, as "fundamentally sound," the approach taken by the plaintiff's expert. That approach has three steps. First, the pensioner's hypothetical nondisability pension is determined by multiplying the pensioner's final average salary by the percentage of that salary to which the pensioner would likely have been entitled upon retirement had the disability not cut short his or her employment. Second, the coverture fraction is applied to determine the marital portion of the hypothetical nondisability pension. Third, the actual nondisability portion of the pension is determined by reducing the hypothetical nondisability pension by the percentage of the years of service that the pensioner actually served.

Here, the record was insufficient for the court to make this calculation. The only evidence in the record as to the nature of the plaintiff's pension was his testimony that he receives approximately $5,000 per month from a disability pension. There was no evidence of the terms of the pension plan pursuant to which the plaintiff retired and there is no statement from the plan administrator as to how the pension amount was calculated. There is nothing in the record about the plaintiff's earnings, such that a hypothetical final average salary could be determined, and there is nothing that establishes the percentage of final average salary to which the plaintiff is entitled as his pension. Thus, as the Supreme Court found, there is no record upon which it could determine the nondisability value of the plaintiff's pension.

While the factors necessary to employ the *Palazzolo* formula were not on the record here, however, they were necessarily known to the plan administrator when it calculated the plaintiff's disability pension. The administrator certainly knew the terms of the plaintiff's pension plan, the plaintiff's final average salary, and the percentage of that salary by which the

pension is determined. The *Palazzolo* calculation requires nothing more.

As a practical matter, the division, into two separate postmarital accounts, of what was the nondisability pension of one spouse during the marriage, is accomplished by the plan administrator, without the intervention of the court, pursuant to a qualified domestic relations order, consistent with *Majauskas*, which the administrator either prepares or, more frequently, approves. For that order to satisfy the relevant requirement of the Internal Revenue Code, it need only specify "the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, *or the manner in which such amount or percentage is to be determined*" (26 USC § 414 [p] [2] [B] [emphasis supplied]). Just as the *Majauskas* formula is routinely incorporated into a qualified domestic relations order to satisfy this requirement (*see Tomei v Tomei*, 39 AD3d 1149 [2007]; *Cowley v Cowley*, 15 AD3d 974 [2005]; *Agars v Agars*, 6 AD3d 866 [2004]), the *Palazzolo* formula can be incorporated as well.

There may be situations, of course, where the particular facts of the case make this simple approach to the equitable distribution of a disability pension unworkable. In those cases, counsel can always present the issue for resolution at trial and obtain an adjudication of the marital share by the court on the basis of expert testimony or otherwise. Matrimonial litigation is costly enough. However, where, as here, the facts of the case make it possible to determine the disposition of a pension without such evidence, we should not hesitate to embrace that opportunity.

## II

In addition to his disability pension, the plaintiff received an award from the September 11th Victim Compensation Fund as a result of injuries he suffered in the aftermath of that tragedy. The administrator of that fund specifically designated a portion of that award, in the amount of $127,571, as compensation for economic loss. The Supreme Court held that the economic component of the award constitutes "compensation for personal injuries" within the meaning of Domestic Relations Law § 236 (B) (1) (d) (2) and, on that basis, treated the award as the separate property of the plaintiff. We agree with that determination, because the legislative history of the Equitable Distribution Law compels it.

Initially, the plaintiff argues that the defendant's contentions regarding the Victim Compensation Fund award have been

rendered academic, since the plaintiff retired from the Fire Department at the same time as he received the award. While it is true that the plaintiff's receipt of the award and his retirement were contemporaneous, the divorce action was not commenced until approximately 16 months later. Since the marital economic partnership did not terminate until commencement of the action (*see Anglin v Anglin*, 80 NY2d 553, 557 [1992]), there were some lost earnings during the marriage for which the award was intended to provide compensation. Thus, while the plaintiff's argument would limit the marital share of any portion of the award, it does not dispose of the defendant's argument entirely. If the future economic loss component of the Victim Compensation Fund award is marital property, then the defendant would have a claim for some portion of it.

It is a basic principle of the Equitable Distribution Law that marital property consists of "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held," other than property that is defined as separate (Domestic Relations Law § 236 [B] [1] [c]). One category of property that is defined as separate is "compensation for personal injuries" (Domestic Relations Law § 236 [B] [1] [d] [2]). For equitable distribution purposes, an award pursuant to the September 11th Victim Compensation Fund is the equivalent of a recovery in a personal injury action, the noneconomic portion of which clearly falls within this category of separate property. The only issue is whether the economic component of the award does so as well.

The Court of Appeals has never addressed this issue. The conventional wisdom that the economic component of a personal injury award is separate property is derived from the holding of the Appellate Division, Third Department, in *Fleitz v Fleitz* (200 AD2d 874 [1994]) and the decisions of the Appellate Division, First Department and the Appellate Division, Fourth Department, that have followed it (*see Gann v Gann*, 233 AD2d 188 [1996]; *Solomon v Solomon*, 206 AD2d 971 [1994]). We have never cited *Fleitz*, and the decisions of our Court which were cited in *Fleitz, Samaritano v Samaritano* (172 AD2d 817 [1991]), *Richmond v Richmond* (144 AD2d 549 [1988]) and *Rossi v Rossi* (137 AD2d 590 [1988]), do not address the propriety of drawing a distinction between the economic and noneconomic portions of a personal injury award.

The *Fleitz* decision was grounded, essentially, in its analysis of the statutory text. As the *Fleitz* court put it, "Domestic Rela-

tions Law § 236 (B) (1) (d) is clear in its language and leaves no ambiguity requiring interpretations. The definition makes no distinction between the economic and noneconomic (pain and suffering) elements of personal injury compensation, and we decline to create such a dichotomy" (*Fleitz v Fleitz*, 200 AD2d at 875 [citations omitted]).

The phrase "compensation for personal injuries," however, is not without ambiguity. It can be read equally clearly as encompassing the entire award in a personal injury action or as limiting the marital share of that award to the portion constituting compensation for the actual injuries, i.e., the pain and suffering component. While a definition of the term separate property as "any recovery in a personal injury action" would be clear, that is not the phrase the Legislature used.

Textual analysis, moreover, while the starting point for statutory construction (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 94; *Samiento v World Yacht Inc.*, 10 NY3d 70, 77-78 [2008]), is not its end point. Statutory language also must be construed in a manner that reads the statute as a unified whole (*see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 91, 98; *People v Finley*, 10 NY3d 647, 655 [2008]; *Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105, 115 [2007]; *State of New York v Patricia II.*, 6 NY3d 160, 162 [2006]). Viewing the phrase "compensation for personal injuries" as including the economic component of a personal injury award and, therefore, the separate property of the injured spouse is, however, clearly inconsistent with the logic of the Equitable Distribution Law.

The purpose of the Equitable Distribution Law was "to treat marriage in one respect as an economic partnership" (*Hartog v Hartog*, 85 NY2d 36, 47 [1995]). The economic portion of a personal injury award is compensation for a loss, presumably lost earnings, that is suffered by both spouses, since the earnings that were lost during the marriage would have been marital property. Since the loss is suffered by both spouses, the compensation for that loss should be shared by both as well (*see Rich v Rich*, 126 Misc 2d 536 [1984]).

The logic of this approach is apparent from looking at the portion of such an award that constitutes reimbursement for medical expenses. Surely, reimbursement for medical expenses paid from the marital estate should be marital property (*see* Scheinkman, New York Law of Domestic Relations § 14:48 [11 West NY Prac Series 2007]). Lost earnings likewise represent a loss to the marital estate, rather than to the injured spouse, and should logically be treated in the same way.

Other assets that represent compensation for the loss of marital earnings are treated in precisely this manner. There is no dispute, for example, that severance pay or a bonus earned during the marriage but paid after commencement would be treated as marital property (*see Hartog v Hartog*, 85 NY2d at 49; *Richmond v Richmond*, 144 AD2d at 551). Similarly, in addressing the distribution of a disability pension, we distinguish, as the first part of this opinion discussed, between the portion of the pension that constitutes compensation for the disability and the portion that merely constitutes deferred compensation, treating the former as separate and the latter as marital (*see Mylett v Mylett*, 163 AD2d at 464-465; *see Link v Link*, 304 AD2d at 801; *Beshara v Beshara*, 281 AD2d at 578; Domestic Relations Law § 236 [B] [5] [b]).

Thus, the logic of the Equitable Distribution Law is that pain and suffering is personal and, therefore, the compensation for it is separate, but earnings are marital and, therefore, the compensation for lost earnings during the marriage should be marital as well. As the commentators have recognized, this distinction "would have much to commend it" (*see* Scheinkman, New York Law of Domestic Relations § 14.48, at 501 [11 West NY Prac Series 2007]) and "is supported by the overall policies of the Equitable Distribution Law" (3 Freed, Brandes and Weidman, Law and the Family New York § 2:6, at 70). It also is consistent with the treatment of personal injury awards for divorce distribution purposes in the majority of jurisdictions (*see* Kemper, Annotation, *Divorce and Separation: Determination of Whether Proceeds from Personal Injury Settlement or Recovery Constitute Marital Property*, 109 ALR5th 1 [collecting authorities]; Wine, Comment, *Treatment of Personal Injury Awards During Dissolution of Marriage*, 20 J Am Acad Matrimonial Law 155 [2006]; Blumberg, *Marital Property Treatment of Pensions, Disability Pay, Workers' Compensation, and Other Wage Substitutes: An Insurance, or Replacement, Analysis*, 33 UCLA L Rev 1250, 1282 [1986]).

While the logic of the Equitable Distribution Law thus suggests the conclusion that the economic portion of a personal injury award should be marital property, however, the legislative history compels the contrary result. The exclusion from marital property of "compensation for personal injuries" was not in the original equitable distribution proposal. As Professor Henry H. Foster, who was actively involved in drafting the Equitable Distribution Law, explains in his treatise, "[e]xemption

(2) in Domestic Relations Law § 236 (B) (1) (d) was added belatedly at the request of legislative counsel, shortly before the enactment of the Equitable Distribution Law" (3 Freed, Brandes and Weidman, Law and the Family New York § 2:6, at 69) and "was accepted in order to obtain additional and important backing for the new law" (Henry H. Foster, *Commentary on Equitable Distribution*, 26 NY L Sch L Rev 1, 9 [1981]; *see also* Henry H. Foster, Jr., and Doris Jonas Freed, Family Law, 32 Syracuse L Rev 335, 344-345). Professor Foster bemoans this compromise as "highly questionable both as a matter of logic and in view of the [premise] behind the new law" (Foster, *Commentary on Equitable Distribution*, at 9) and concludes that "it would have been better to separate items for mental pain and anguish from other items in compensation and to treat damages for loss of income and bills incurred as marital property" (*id.* at 10). Foster's analysis, however, recognizes that the statute's purpose was to exclude from marital property both the economic and the noneconomic portion of a personal injury award.

The circumstances in which the intent of the Legislature may be gleaned from a commentary that is critical of the Legislature's action are rare. This, however, is such a case. Professor Foster was the author of the original bill, and the Bill Jacket establishes that he was active throughout the Legislature's consideration of the bill. His commentary criticizing the exclusion clearly implies that it encompasses the economic component of a personal injury award. His explanation of the manner in which the exclusion came to be included in the legislation, published shortly after the law's enactment, is compelling proof that the proponents of the bill reluctantly acquiesced in the inclusion of the provision, despite its inconsistency with what was otherwise the intent of the legislation. Since the legislative intent must control (*see People v Santi*, 3 NY3d 234, 243 [2004]), the inescapable conclusion is that the Supreme Court was correct in determining that the portion of the Victim Compensation Fund award received by the plaintiff that constitutes compensation for economic loss during the marriage is the plaintiff's separate property.

## III

The plaintiff's contentions regarding the allocation of responsibility for the medical, child care, and tuition expenses for the children are without merit (*see* Domestic Relations Law

§ 240 [1-b] [b] [5] [iv], [vii] [C]; [c] [4], [5], [7]; *see also Matter of Graby v Graby*, 87 NY2d 605, 611 [1996]; *Wallach v Wallach*, 37 AD3d 707, 709 [2007]).

IV

For the foregoing reasons, the judgment is modified, on the law, by deleting the nineteenth decretal paragraph thereof, and substituting therefor a provision adjudging that the defendant is entitled to a portion of the plaintiff's pension determined in accordance with *Majauskas v Majauskas* (61 NY2d 481 [1984]) and *Palazzolo v Palazzolo* (242 AD2d 688 [1997]); as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, and the matter is remitted to the Supreme Court, Orange County, for the entry of an appropriate qualified domestic relations order in accordance herewith.

DILLON, FLORIO and ANGIOLILLO, JJ., concur.

Ordered that the judgment is modified, on the law, by deleting the nineteenth decretal paragraph thereof, and substituting therefor a provision adjudging that the defendant is entitled to a portion of the plaintiff's pension determined in accordance with *Majauskas v Majauskas* (61 NY2d 481 [1984]) and *Palazzolo v Palazzolo* (242 AD2d 688 [1997]); as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, with costs to the plaintiff, and the matter is remitted to the Supreme Court, Orange County, for the entry of an appropriate qualified domestic relations order in accordance herewith.