Tierney v Tierney
2026 NY Slip Op 03720
June 11, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Sean W. Tierney, Respondent,
v
Wendy L. Tierney, Appellant.

Decided and Entered:June 11, 2026
CV-25-0961
Calendar Date: April 30, 2026
Before: Pritzker, J.P., Ceresia, Fisher, Mcshan And Corcoran, JJ.

Copps DiPaola Silverman, PLLC, Albany (Kayla Leder of counsel), for appellant.
The Law Office of Kelley M. Enderley, PC, Poughkeepsie (Kelley M. Enderley of counsel), for respondent.

[*1]
McShan, J.
Appeal from an order of the Supreme Court (Stephan Schick, J.), entered May 22, 2025 in Sullivan County, which denied defendant's motion for an amended domestic relations order.
Defendant (hereinafter the wife) and plaintiff (hereinafter the husband) were married in 1998. The husband was employed with the Department of Corrections and Community Supervision (hereinafter DOCCS) from 1999 until he was medically terminated in 2021 resulting from a lower back injury. In 2019, the husband commenced an action for divorce. At the commencement of trial for the divorce action, the parties stipulated, as pertinent here, that the husband's pension with the New York State and Local Retirement System was to be divided pursuant to the formula embodied in Majauskas v Majauskas (61 NY2d 481 [1984]), the wife was entitled to a share of the husband's pre-retirement death benefit and — pending the husband's retirement — shall be named as an irrevocable beneficiary for her portion of the husband's pre-retirement death benefit and pension. The agreement required the husband to choose a retirement option to ensure that the wife would continue to receive her full share of the pension payment in the event she was predeceased by the husband.
After conducting a trial on several outstanding issues not addressed in the parties' stipulation, Supreme Court (Meddaugh, J.) issued findings of fact and conclusions of law that, in relevant part, directed the husband to immediately notify the wife if he were electing to apply for a disability pension, and that the wife's distributive share of the husband's disability pension shall be awarded via a domestic relations order (hereinafter DRO).FN1 The court further determined that the wife shall receive a biweekly spousal maintenance award, "until she is eligible for Social Security retirement benefits, subject to earlier termination if she remarried, or upon the commencement of her receipt of her equitable share of [the husband's] regular or disability pension." In March 2021, a judgment of divorce was entered in accordance with the court's findings.
A few months later in May 2021, the husband was terminated from his employment with DOCCS. Thereafter, the husband applied for a disability retirement benefit that was approved in April 2023 with an effective date of his retirement set in May 2021. In April 2022, Supreme Court issued a DRO directing that the wife's share of the husband's Retirement System pension was to be calculated as "100% of a fraction," and that, should he retire on a disability retirement benefit, the wife's share would be calculated by using a hypothetical service retirement benefit.
However, the wife received a letter from the Retirement System in September 2023 advising that it was rescinding its acceptance of the April 2022 DRO because the wife's calculated share of the husband's pension benefit exceeded the total benefit amount. Accordingly, in August 2024, the wife filed a motion seeking the issuance of an [*2]amended DRO. The husband opposed the motion, contending that he was receiving workers' compensation benefits and that his injury and termination prevented him from receiving benefits from his pension. Supreme Court (Schick, J.) denied the request for an amended DRO pending a hearing because the court did not believe that it was a retirement pension subject to a DRO.FN2 Following that hearing, Supreme Court denied the wife's motion, reasoning that the husband was not retired because he had been terminated from his employment and had demonstrated that the pension was 100% disability based upon a decision from the Worker's Compensation Board, and thus, separate property. The wife appeals.
The wife argues that Supreme Court erred in denying her request for an amended DRO because the parties agreed that the husband's benefit would be divided pursuant to the Majauskas formula. Moreover, she avers that Supreme Court (Meddaugh, J.) had already determined, in the judgment of divorce, that the wife's share of the disability pension was to be awarded via a DRO. "In the context of a matrimonial action, [the Court of Appeals] has recognized that a final judgment of divorce settles the parties' rights pertaining not only to those issues that were actually litigated, but also to those that could have been litigated" (Xiao Yang Chen v Fischer, 6 NY3d 94, 100 [2005] [citations omitted]). A DRO issued pursuant to a judgment of divorce must convey those rights as articulated in the court's findings and corresponding judgment; "[i]f a DRO is inconsistent with the provisions of a stipulation or judgment of divorce, courts [merely] possess the authority to amend the DRO to accurately reflect the provisions of the [judgment] pertaining to pension benefits" (Van Orden v Van Orden, 140 AD3d 1282, 1283 [3d Dept 2016] [internal quotation marks, brackets, ellipsis and citations omitted], lvs dismissed 28 NY3d 1046 [2016], 28 NY3d 1169 [2017]; see Montero v McFarland, 70 AD3d 1282, 1284 [3d Dept 2010]; Smith v Smith, 59 AD3d 905, 906 [3d Dept 2009]).
As indicated in the findings of fact issued by Supreme Court in connection with the judgment of divorce, the husband testified at the December 2020 trial that, at that time, he was receiving workers compensation benefits in connection with a work-related back injury that he suffered in May 2019. The husband elaborated that, after those benefits expired and he further exhausted his accruals for sick time and vacation, his employment would be subject to termination and, if unable to work, he would have to apply for a disability pension. In connection with those findings, the court recited the well-established principle that "to the extent that the disability pension represents deferred compensation, it is subject to equitable distribution" (Maliah-Dupass v Dupass, 239 AD3d 960, 962 [2d Dept 2025] [internal quotation marks and citations omitted]; see Fanning v Fanning, 221 AD3d 655, 655-656 [2d Dept 2023]). To that end, "[w]hile it [*3]is true that the portion of a disability pension which represents compensation for personal injuries is separate property, the party so claiming bears the burden of demonstrating what portion of the pension reflects compensation for personal injuries, as opposed to deferred compensation" (Zeledon v Zeledon, 211 AD3d 1387, 1390 [3d Dept 2022] [internal quotation marks and citations omitted]; see Dolan v Dolan, 78 NY2d 463, 466 [1991]; St. John v Beinart-St. John, 227 AD3d 1203, 1205 [3d Dept 2024]; Miszko v Miszko, 163 AD3d 1204, 1205 [3d Dept 2018], lv denied 33 NY3d 907 [2019]). The court went on to direct that the husband immediately advise the wife if he was electing to apply for a disability pension and that the wife's distributive share of same shall be awarded by a qualified domestic relations order. Further, the court awarded the wife spousal maintenance until she became eligible for Social Security, subject to earlier termination in the event of her remarriage or "upon the commencement of her receipt of her equitable share of [the husband's] regular or disability pension." The judgment of divorce memorialized those determinations.
We find that Supreme Court's findings of facts and conclusions of law issued in connection with the judgment of divorce establish that the issue as to whether the disability pension was marital property was litigated and decided in the divorce trial (see Mula v Mula, 151 AD3d 1326, 1328 [3d Dept 2017]; see also Curley v Curley, 195 AD3d 1183, 1186 [3d Dept 2021], lv denied 38 NY3d 905 [2022]). To that end, the ordinary disability pension that the husband now receives contains a length of service requirement (see Retirement and Social Security Law § 507-a [b] [1]), reflective of "the desire to provide employees whose injuries have prevented them from working until normal retirement age with some form of compensation for their injuries while also awarding them a portion of the deferred compensation to which they would have been entitled but for the injuries" (Dolan v Dolan, 78 NY2d at 468). The husband's testimony during the divorce trial, as articulated by Supreme Court in its findings of fact, made clear that he was aware that he could potentially have to take a disability pension, and it was incumbent on him to establish what portion of that pension was separate property (see Rosenberger v Rosenberger, 63 AD3d 898, 900 [2d Dept 2009]; Pulaski v Pulaski, 22 AD3d 820, 821 [2d Dept 2005]).
Ultimately, the mistake precipitating the wife's motion arose from the erroneous language contained in the initial DRO, which improperly provided the wife with 100% share of the Majauskas fraction and, in the case that the husband received a disability pension, an amount that was predicated on a hypothetical service retirement, which ultimately exceeded the amount of the total monthly disability benefit. However, the time to litigate whether and what portion of the disability pension was marital property subject to equitable distribution [*4]was at the trial preceding the final judgment of divorce and, in the event of any disagreement, through a timely appeal of that judgment (see e.g. Howe v Howe, 68 AD3d 38, 41-42 [2d Dept 2009]; Nichols v Nichols, 19 AD3d 775, 778 [3d Dept 2005]; West v West, 101 AD2d 834, 835 [2d Dept 1984]; see generally Taberski v Taberski, 197 AD3d 871, 872 [4th Dept 2021]; compare Berardi v Berardi, 54 AD3d 982, 986 [2d Dept 2008]). Accordingly, it was error to allow the husband to relitigate the issue of the wife's equitable share of the husband's disability pension in opposition to the motion for an amended DRO (see Mula v Mula, 151 AD3d at 1328; Van Orden v Van Orden, 140 AD3d at 1284; see generally Purcell v Ngambo, 180 AD3d 1093, 1095 [2d Dept 2020]).FN3
We also agree with the wife's contention that she is entitled to arrears from the date on which the benefits began to accrue. The wife's right to receive her portion of the disability pension began at the time the husband started to receive the pension and the record does not indicate that she waived her equitable share of the benefits (see Fernandez v Fernandez, 223 AD3d 1064, 1067 [3d Dept 2024]; Peek v Peek, 301 AD2d 201, 204-205 [3d Dept 2002], lv denied 100 NY2d 513 [2003]). Accordingly, Supreme Court (Schick, J.) should calculate the arrearage, crediting the husband with any maintenance payments paid after the wife became eligible for her share of the husband's disability pension. The parties' remaining contentions are rendered academic by our determination herein.
Pritzker, J.P., Ceresia, Fisher and Corcoran, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, defendant's motion for the issuance of an amended domestic relations order providing for immediate distributions of a marital share of plaintiff's disability pension benefits to defendant is granted; and matter remitted to the Supreme Court for entry of an amended domestic relations order and for calculation of the amount owed to defendant in arrears.

Footnotes

Footnote 1
Although the judgment of divorce directed the use of a qualified domestic relations order to effectuate distribution of the wife's share of the husband's pension, Supreme Court properly issued a DRO to that effect.

Footnote 2
In December 2024, the wife filed a motion seeking the issuance of a judicial subpoena duces tecum from the Retirement System and a judicial subpoena ad testificandum for the administrator of the retirement plan (or a retirement program administrator or any other retirement plan designee familiar with the matter). Supreme Court denied the motion for a judicial subpoena ad testificandum and granted the motion for a judicial subpoena duces tecum.

Footnote 3
We note that the holding in Majauskas provides for the method of calculating the marital portion of a pension; it does not, however, require that such portions be equally divided (seeMajauskas v Majauskas, 61 NY2d at 486). Nevertheless, in this case the reference to Majauskas in the stipulation of settlement and judgment of divorce, without further elaboration, establishes the intent to provide the wife with a 50% share of the husband's pension, including the disability pension, consistent with the distribution in Majauskas (see Reukauf v Kraft, 203 AD3d 1652, 1654 [4th Dept 2022]; Matter of Gursky v Gursky, 93 AD3d 1127, 1128 [3d Dept 2012]; see generally Fernandez v Fernandez, 223 AD3d 1064, 1065 [3d Dept 2024]).