■ ERIKA KLAUER, Respondent-Appellant, v ASA ABELIOVICH, Appellant-Respondent. [53 NYS3d 37]—

Order, Supreme Court, New York County (Deborah A. Kaplan, J.), entered October 16, 2015, which, to the extent appealed from, upon the parties' motions, confirmed in part and rejected in part a special referee's report which, among other things, determined defendant's child support obligations, awarded plaintiff a separate property credit of $350,000, divided certain marital property by awarding 70% to plaintiff and 30% to defendant, and awarded defendant $500,000 in counsel fees, unanimously modified, on the law and the facts, to eliminate the separate property credit of $350,000, to award plaintiff artwork entitled "Hamburger Hill" as her separate property not subject to distribution, to award interest on the distributive award pursuant to CPLR 5002, for a determination of equitable distribution regarding the $1,350,000 in increased value in the East Tenth Street condo which was sold after the court's order, and with respect to child support, to remit the matter to Supreme Court for further analysis regard-

---

ing and clarification of defendant's obligations with respect to summer and/or any other extracurricular activities not specifically agreed to, and how such expenses are to be allocated among the parties, if at all, and otherwise affirmed, without costs.

The parties were married in December 2008 and there is one child of the marriage, born in 2010. The Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b]) (CSSA) sets forth a method or formula for how basic child support must be calculated. This entails using the combined adjusted gross income of the parents up to a statutory cap, and then applying a fixed percentage to reflect how many children the support award is for (*see e.g. Holterman v Holterman*, 3 NY3d 1, 11 [2004]). Here, the statutory cap is $141,000 and the applicable percentage is 17%. Where there is income over the cap, the final step in calculating basic child support entails application of the "paragraph (f)" factors (Domestic Relations Law § 240 [1-b] [f]). Such factors include the financial resources of the parents and child, the health of the child and any special needs, the standard of living the child would have had if the marriage had not ended, the disparity in the parents' incomes, and any other factors the court deems are relevant.

Although the parties had income in excess of $2 million in 2012, defendant's prorata share of basic child support, based on his income of $217,826 only accounts for 10.5% of that combined parental income. Supreme Court correctly rejected the Referee's recommendation as to basic child support and it did not abuse its discretion or misapply the law when it determined that in setting the basic child support obligation the parties' combined income above the $141,000 statutory cap should be taken into consideration (Domestic Relations Law § 240 [1-b] [f]). In deciding to utilize the parties' combined income up to $800,000 in setting support, the court examined whether the capped support "adequately reflects a support level that meets the needs and continuation of the child['s] lifestyle" and concluded that it did not (*Beroza v Hendler*, 109 AD3d 498, 500-501 [2d Dept 2013]). During the marriage, the child shared in the bounty of his parents' very comfortable standard of living, which included residence in a luxury apartment, a garaged car at their disposal, a full-time nanny, regular use of a weekend sitter, and dinners outside the home. The court observed that rote application of the statutory cap would have resulted in defendant only having to pay $209.74 per month in basic child support ($141,000 x 17% for one child x 10.5%), clearly less than his financial contributions during the

marriage. By moving the income cap upwards to $800,000, defendant's pro-rata share of basic support increased to $1,190 per month ($800,000 x 17% for one child x 10.5%). The court correctly applied the three step process in the support guidelines and also the paragraph (f) factors. It also articulated a proper basis for applying the CSSA guidelines to the combined parental income in excess of the statutory cap (*see* Domestic Relations Law § 240 [1-b] [f]; *Matter of Cassano v Cassano*, 85 NY2d 649, 653 [1995]). Although defendant's income is far less than plaintiff's, he still enjoys a relatively high income, and has the financial means to pay more than just $209.74 per month in basic child support, an amount that even defendant agrees would not comport with the parties' lifestyle and income. Contrary to defendant's contention, Supreme Court, under the circumstances, providently exercised its discretion in ordering that he pay 20% of the child's educational expenses, including college, until the child attains age 21 (*see Cimons v Cimons*, 53 AD3d 125, 131 [2d Dept 2008]). The court did not lightly make this determination, rather it took into consideration several factors, including the high educational achievements of both parties and their professions. Plaintiff, a financial analyst, has a B.A. from Georgetown and an MBA from Columbia Business School; she also holds series 3 and 7 licenses. Defendant, an associate professor of medicine at Columbia University Medical School, has a B.A. from Massachusetts Institute of Technology and a M.D./Ph.D. from Harvard. During the marriage the parties agreed the child would be privately educated and their enrollment of the child in a private nursery school when he was only nine months old reflects their agreement. There is no indication that defendant cannot afford to pay his share of private school tuition, and his argument that the child is too young for the court to have addressed higher education issues does not warrant modification of Supreme Court's order. There is no reason to delay resolution of the issue of higher education, including college, because it appears to be an inevitable expense for this child, given the parties' apparent commitment to an enriched education, the parties' means and their high level of educational achievements (*see e.g. Cimons*, 53 AD3d at 129). We affirm the award because it was not an improvident exercise of the court's discretion.

We also affirm Supreme Court's order that defendant pay 10.5%, his pro rata share, for a full-time nanny. Although plaintiff has a baby born during this litigation, not of the marriage, and the parties' child, now age 6, is in kindergarten, plaintiff is employed full-time and needs reliable child care to

meet her work commitments (Domestic Relations Law § 240 [1-b] [c] [4]; *see Michael J.D. v Carolina E.P.*, 138 AD3d 151, 153 [1st Dept 2016]; *Iarocci v Iarocci*, 98 AD3d 999 [2d Dept 2012]). Defendant has not shown that this childcare expense would be any less costly were the nanny only responsible for taking care of one child, not two.

To their credit, the parties resolved custody without a hearing, and in their parenting agreement they set forth some details about how certain extracurricular expenses would be scheduled and paid for. They agreed that each parent bears financial responsibility for the activity he or she enrolls the child in, and also agreed the child would participate in sports once he is old enough. Their agreement refers to summer activities and camp, and the parties agreed that in the event they cannot reach a decision as to these activities, plaintiff will be the decision maker. The agreement distinguishes those activities from the issue of sleepaway camp. If sleepaway camp is more than six weeks, the decision will be made by a tie-breaker. Aside from the activities described in their agreement, the parties do not otherwise resolve or address how summer activities will be paid for. Absent an agreement to the contrary, or without engaging in a proper analysis under the paragraph (f) factors of the Domestic Relations Law, the court should not have ordered defendant to pay for these summer and/or extracurricular activities (Domestic Relations Law § 240 [1-b] [f]; *Michael J.D.*, 138 AD3d at 154). Unlike health care and child care expenses, these "add-on" expenses are not separately enumerated under the CSSA and it is usually anticipated that they will be paid from the basic child support award ordered by the court (*Michael J.D.*, at 153-154). Furthermore, without explaining why, Supreme Court allocated these add-ons in the same manner it allocated educational expenses (i.e. 20% to defendant as opposed to 10.5%). Because the court made its determination before this Court's decision in *Michael J.D.*, where we clarified how these add-ons should be analyzed and separately justified under paragraph (f), we remit to Supreme Court the issue of how summer and/or any other extracurricular activities not specifically agreed to by the parties will be allocated between them, if at all.

Each side appeals from Supreme Court's separate property credit award to plaintiff arising from the parties' purchase of a cooperative apartment at 1136 Fifth Avenue (Fifth Avenue coop). The coop, which was purchased in both parties' names, was bought in May 2009. It was not the marital residence when this action was commenced in May 2011; the Fifth Avenue coop

was sold in January 2011 and part of the proceeds were used to purchase a condominium apartment on East 10th Street. East 10th Street, also in both parties' names, was the martial residence when this action was commenced. We now modify to eliminate the award of the separate property credit to plaintiff in the amount of $350,000 and otherwise affirm Supreme Court's denial of any further separate property credit to plaintiff in the amount of $932,000 for payments toward the principal and/or renovation costs of the Fifth Avenue coop.

Marriage is an economic partnership and "marital property" should be broadly construed to effectuate that concept (*Fields v Fields*, 15 NY3d 158, 162-163 [2010]). Conversely, separate property, which is an exception to this concept, "should be construed 'narrowly' " (*Fields*, 15 NY3d at 163). Were courts to engage in the kind of precise financial tracing plaintiff invokes, they would be paralyzed by divorcing parties "seeking review of every debit and credit incurred" during their marriage (*Mahoney-Buntzman v Buntzman*, 12 NY3d 415, 421 [2009]). The economic decisions made by parties in an intact marriage should be respected, and rather than using a scalpel to finely adjust for separate property contributions dollar-for-dollar over the course of the entire marriage, a court should effectuate an equitable distribution of marital assets, taking into account all relevant factors, including relative or disproportionate financial contributions (*Mahoney-Buntzman*, 12 NY3d at 420, 421).

Plaintiff is not entitled to a separate property credit for the $350,000 down payment or the additional sum of $932,000 the parties applied towards the purchase price of the Fifth Avenue coop. Even if any of these funds had once been separately titled accounts or her separate premarital assets they lost that character once she committed them to the purchase of the coop in both their names and thereafter used a significant portion of the sales proceeds to purchase another apartment in both their names. The fact that some monies were deposited into the U.S. Trust account before defendant's name was added to it does not justify treating some of the money as separate and other money as marital. Not only did the parties jointly take title of the Fifth Avenue coop, they committed themselves as an intact unit to its renovation, they lived in it together before "flipping" it, and then reinvested the net profits of the coop sale into yet another apartment that became the parties' marital residence. The conveyance of separate funds under these circumstances resulted in the separate assets becoming presumptively marital and partial use of separate funds to acquire a marital asset does not mandate that plaintiff be credited for any separate

funds she committed (*see Fields*, 15 NY3d at 167). Although plaintiff claims she conveyed the funds for convenience purposes only, specifically to facilitate board approval, these broad claims are belied by the parties' activities as a cohesive marital unit, leading us to conclude that plaintiff is not entitled to the separate property credits with regard to the Fifth Avenue coop. Accordingly, we modify the court's award of a separate property credit in the amount of $350,000 and affirm Supreme Court's denial of a further separate property credit in the amount of $932,000.

While in some cases a spouse who contributes separate property towards the down payment of a jointly titled residence may be allowed a separate property credit (*see Heine v Heine*, 176 AD2d 77, 84 [1st Dept 1992], *lv denied* 80 NY2d 753 [1992]), the Fifth Avenue coop was not only sold before this action was commenced, plaintiff also failed to rebut the statutory presumption that the separate property was not commingled or committed to the marriage (*see Fields*, 15 NY3d at 165-166). There is no basis to credit plaintiff for the down payment under these circumstances.

Although we modify to deny the separate property credits with respect to the purchase of the Fifth Avenue coop, we affirm the court's equitable distribution of the net proceeds from the sale of the East 10th Street condo. In deciding that plaintiff is entitled to 70% and defendant 30% of the net proceeds of the sale, Supreme Court considered and properly balanced the parties' respective, uneven, contributions, both economic and noneconomic, that made it possible for them to acquire the marital residence, a luxury condominium apartment. For instance, the court credited plaintiff's talents as a knowledgeable and skillful "flipper" of real property as one of the reasons, if not the "driving force," for why the Fifth Avenue coop was sold at a net profit of $2,819,430, a significant portion of which was then applied towards the purchase of the parties' East 10th Street condo. The court also took into account the parties' respective payments towards the upkeep and monthly costs of the apartment. Plaintiff paid the mortgage on the condo and kept it insured; she also paid for some minor improvements before they moved in. The court credited defendant with his financial contributions to the East 10th Street condo, which were significant relative to his salary and income. For instance he paid the maintenance and utilities. The court's distribution of the East 10th Street condo 70% to plaintiff and 30% to defendant was not an improvident exercise of its discretion. To the contrary, the court carefully weighed and credited each

side's economic and noneconomic contributions. Under the circumstances, the distribution of this marital asset is fair and equitable (*Mahoney-Buntzman* at 420).

Although the court originally ordered an appraisal of the condo, it has since been sold at a much higher price than its appraisal (it sold for $6.85 million as compared to the $5.5 million appraisal price). While a valuation close to the date of trial is appropriate in most situations, the parties disagree on what manner, if any, the increase in value should be distributed. Since information regarding the sale is outside the record, we remit the issue to the Supreme Court for a determination of equitable distribution regarding the $1,350,000 in increased value.

Supreme Court did not improvidently exercise its discretion in awarding defendant a $20,931 credit representing mortgage payments he made on plaintiff's premarital real property in Washington, Connecticut. While the property is indisputably separate, defendant is entitled to any appreciation of that asset during the marriage as a result of his direct and/or indirect efforts (*Hartog v Hartog*, 85 NY2d 36 [1995]). The credit represents 30% of the difference between the mortgage balance on the date of the marriage and on the date of commencement of these proceedings (i.e. 30% of $69,770) (*see Bernholc v Bornstein*, 72 AD3d 625, 628-629 [2d Dept 2010]). The credited amount is a proxy for the increase in value of the separate property during the parties' marriage.

We also affirm Supreme Court's distribution equal to 30% of the $1,840,000 in loans plaintiff made to Wykeham Rise. Said loans were funded in part by the proceeds of the sale of the Fifth Avenue coop, which are marital funds. The distribution, that is the amount defendant may recoup as a credit, coincides with the court's distribution of the marital residence on East 10th Street.

The court also correctly determined that plaintiff's bonus, although paid after this action was commenced, was compensation for her past performance, not tied to future performance (*see DeJesus v DeJesus*, 90 NY2d 643, 652 [1997]). As a general rule, bonuses paid as compensation for past services are marital property and subject to equitable distribution (*see Ropiecki v Ropiecki*, 94 AD3d 734, 736 [2d Dept 2012]). In awarding defendant 30% of plaintiff's 2011 employment bonus, or the sum of $25,952.76, the court accounted for payments that plaintiff made to reduce marital debt using that money. The court also prorated the bonus to reflect that although it was paid for the 2011 calendar year, the parties separated in May 2011, mean-

ing only 40% of the total amount could be considered marital (*see Kriftcher v Kriftcher*, 59 AD3d 392, 392-393 [2d Dept 2009]). We reject plaintiff's arguments that defendant's allocation of this marital property should be reduced to 10% because his economic contributions to the marriage were far inferior or less extensive than plaintiff's and because she made extraordinary efforts to improve the economic condition of the family. This argument disregards the very essence of the equitable distribution law, which is to recognize the direct and indirect contributions of each spouse, whether they are economic or noneconomic (*see e.g. Hartog*, 85 NY2d at 45). The unequal distribution reflects the court's consideration of the parties' respective contributions to the marriage and there is no basis to disturb Supreme Court's equitable distribution of the bonus (*see Huffman v Huffman*, 84 AD3d 875, 877 [2d Dept 2011]).

Both parties have a longstanding interest in artwork, and prior to the marriage, plaintiff founded Steep Rock Foundation, a not-for-profit organization. Steep Rock offers a residence to one or more artists and they are also paid $10,000 stipends to subsidize their living costs while in residence. Plaintiff is on the board of directors and had more direct contact on a regular basis with the artists in residence than defendant, but when plaintiff made financial contributions to Steep Rock during the marriage, she used the joint U.S. Trust account to fund them. Upon completion of their residency, artists would typically give their benefactor artwork as a parting gift. Some artworks were gifted solely to plaintiff, but defendant contends some artwork was gifted to both of them. Before this action was commenced and throughout these proceedings plaintiff also bought and sold some artwork. Although defendant maintains such transactions were in violation of automatic orders, Supreme Court credited plaintiff's claim that she bought and sold artwork to meet household expenses because they exceeded her base income of $400,000 per year, rendering any proceeds thereof marital, but leading to the parties' further disagreement with the court's allocation of these assets (90% to plaintiff and 10% to defendant).

Whereas plaintiff contends defendant should be credited with no value of any of the artwork obtained, bought, sold or remaining, defendant seeks an increased distribution of 40%. We affirm the distribution as is, but modify with respect to one piece, "Hamburger Hill." This artwork was acquired by plaintiff after this action was commenced and purchased with some of the 2011 bonus money. Since defendant is being credited with an equitable share of that bonus, to also award him an equitable

share of Hamburger Hill would be to double-count the proceeds used to purchase it. Hamburger Hill is, therefore, plaintiff's separate property and not subject to equitable distribution.

The court did not improvidently exercise its discretion in apportioning the value of the artwork sold or still remaining in the manner it did. The 90/10 apportionment (10% to defendant), reflects the respective parties' involvement in the acquisition and disposal of artwork throughout the marriage and use of marital assets to make some of the purchases; it also takes into account plaintiff's more substantial contributions, relative to defendant's, as well as the short duration of the marriage.

The court properly accepted plaintiff's position that the $400,000 payment to her father from the net proceeds of the sale of the Fifth Avenue coop was in repayment of a loan, representing monies he had lent the parties to accomplish the renovations to the apartment. It is undisputed that the Fifth Avenue coop underwent extensive, high end renovations at a cost of almost $800,000, and the coop ultimately sold at a significant profit, part of which was then applied towards the purchase of the marital residence. Plaintiff testified that she borrowed $450,000 from her father to finance part of the renovations and used the remainder to meet the parties' expenses. Despite defendant's claim that plaintiff's $400,000 payment to her father is a dissipation of marital assets, there is no evidence to discredit plaintiff's explanation for why she made this payment. Domestic Relations Law § 236 (B) (1) (c) provides that outstanding financial obligations incurred during the marriage, that are not solely the responsibility of the spouse who incurred them, may be offset against the total marital assets to be divided. Defendant has not come forward with any evidence that the costly renovations were paid for differently, or that plaintiff's father did not provide the parties with a loan that was repaid once the Fifth Avenue coop was sold, or that, as he claims, somehow this repayment solely benefitted her.

Turning to the issue of legal fees, the Referee concluded that neither side has demonstrated an entitlement to legal fees. The court rejected that conclusion and ordered that plaintiff pay to defendant's counsel legal fees of $373,000 in twelve equal installments. Domestic Relations Law § 237 (a) contains a rebuttable presumption that "counsel fees shall be awarded to the less monied spouse," and plaintiff is clearly the more monied spouse, earning close to ten times the amount that defendant does. Each side has incurred approximately $1 million in legal fees and although the court ordered that plaintiff pay interim legal fees of $127,000, that award barely scratched the

surface of defendant's expenses. It was not an improvident exercise of the court's discretion to award defendant the additional sum of $373,000 in legal fees, making the total amount awarded $500,000, payable in installments. The award and manner of payment balances the inequities in their income and takes into consideration the equitable distribution that defendant will receive, as well as the relative merits of the legal arguments that were advanced during the course of the proceeding.

While it was a provident exercise of the court's discretion to permit plaintiff to make payments to defendant of his distributive share of the marital assets in installments, defendant correctly argues that post-decision interest is mandatory on the distributive award pursuant to CPLR 5002, and thus should be awarded (*see Moyal v Moyal*, 85 AD3d 614, 615 [1st Dept 2011]).

We have considered the remaining arguments and find them unavailing. Concur—Friedman, J.P., Andrias, Gische and Webber, JJ.