Culman v Boesky (2022 NY Slip Op 03440)





Culman v Boesky


2022 NY Slip Op 03440


Decided on May 26, 2022


Appellate Division, First Department


GESMER, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 26, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Barbara R. Kapnick
Troy K. Webber Ellen Gesmer Saliann Scarpulla Martin Shulman


Index No. 300557/16 Appeal No. 15297-15297A Case No. 2021-00392 

[*1]William S. Culman, Plaintiff-Appellant-Respondent,
v
Marianne Boesky, Defendant-Respondent-Appellant.



Plaintiff appeals and defendant cross appeals from a judgment of divorce of the Supreme Court, New York County (Kelly O'Neill Levy, J.), entered January 14, 2021 after a nonjury trial, to the extent appealed from as limited by the briefs, valuing the subject art work by including the "buyer's premium," awarding plaintiff 7.5% of the appreciation in value of defendant's business, Art Works Inc., during the marriage, 10% of the marital value of M&E, LLC, without awarding defendant a separate property credit, 10% of the marital value of the real property located in the Chelsea propert, 20% of the marital value of the parties' condominium in Aspen, Colorado, 20% of the appreciation in the cash surrender value of defendant's AXA life insurance policy, 10% of the marital value of defendant's personal art collection, and 50% of the remaining assets, including the value of the parties' club memberships, vehicles, wine collection, bank accounts, and investment and retirement funds, directing defendant to pay plaintiff his equitable share of illiquid assets within four years of judgment at 3% interest, and awarding plaintiff $320,000 in counsel fees. The parties also appeal from the order of the same court (Marilyn T. Sugarman, Special Referee) entered on or about October 9, 2020.

Garr Silpe, P.C., New York (Steven M. Silpe and Emily R. Rubin of counsel), for appellant-respondent.
Bikel & Schanfield, New York (Dror Bikel of counsel), for respondent-appellant.
GESMER, J.


Plaintiff appeals and defendant cross appeals from a judgment of divorce of the Supreme Court, New York County (Kelly O'Neill Levy, J.), entered January 14, 2021 after a nonjury trial, to the extent appealed from as limited by the briefs, valuing the subject art work by including the "buyer's premium," awarding plaintiff 7.5% of the appreciation in value of defendant's business, Art Works Inc., during the marriage, 10% of the marital value of M&E, LLC, without awarding defendant a separate property credit, 10% of the marital value of the real property located in the Chelsea propert, 20% of the marital value of the parties' condominium in Aspen, Colorado, 20% of the appreciation in the cash surrender value of defendant's AXA life insurance policy, 10% of the marital value of defendant's personal art collection, and 50% of the remaining assets, including the value of the parties' club memberships, vehicles, wine collection, bank accounts, and investment and retirement funds, directing defendant to pay plaintiff his equitable share of illiquid assets within four years of judgment at 3% interest, and awarding plaintiff $320,000 in counsel fees. The parties also appeal from the order of the same court (Marilyn T. Sugarman, Special Referee) entered on or about October 9, 2020.
The trial court carefully applied our precedents to determine the appropriate and equitable distribution of the parties' many complex and varied assets. While we modify the order in some respects, we reject plaintiff's claim that the trial court's decision was "unprecedented" and "extraordinarily punitive." Plaintiff's argument is based on two significant errors, which are discussed more fully below. First, reducing the court's distribution of assets to a single fraction is reductive and misleading, in light of the complexity of this marital estate which is made up of multiple assets of varying natures. Secondly, plaintiff fails to take into account that the tax consequences that defendant will incur in order to pay his distributive award will greatly reduce her net assets, thus increasing his share of the net marital estate (see e.g. Pappas v Pappas, 140 AD3d 838, 840 [2d Dept 2016]).
Procedural Background
Plaintiff commenced this divorce action on January 19, 2016. The parties stipulated that they would identify and evaluate marital assets as of May 15, 2015. They resolved issues of parenting time and decision-making for their child in a "Parenting Agreement" dated October 23, 2017, which provides that the parties have joint legal custody and defendant has primary physical custody of the child. By order entered on or about March 15, 2019, plaintiff was awarded $300,000 in pendente lite counsel fees, of which defendant was to pay $100,000 from her separate property and the [*2]balance was to be treated as an advance against equitable distribution.
A special referee (the trial court) presided over a 21-day trial of financial issues between February 20, 2019 and August 13, 2019. On the twelfth day of trial, the parties stipulated that the trial court would hear and determine the financial issues. The trial court issued its decision and order after trial on October 9, 2020. The judgment of divorce was entered on January 14, 2021. Both parties appealed. Factual Background
The trial court made the following relevant factual findings, which are supported by the record. We defer, as we must, to the trial court's findings of fact, particularly its findings as to credibility.
The trial court found defendant to be the "more credible witness with respect to the parties' finances," but found that she overstated plaintiff's lack of contributions during the marriage. The trial court found that plaintiff was "far from forthright," noting, for example, that he failed to disclose to defendant and the court that he received an inheritance of $500,000.
At the time of trial, plaintiff was 51 and defendant was 52. They met in 2001 and married on June 28, 2003. They have one child born in 2004.
At the date of marriage, plaintiff was employed in the financial industry, and defendant was the owner of an art gallery, incorporated as Art Works, Inc. (AWI), which she had established in 1995.
Throughout the marriage, the parties paid their living expenses primarily with defendant's income, and did so exclusively after 2008, when plaintiff left his employment. Plaintiff then engaged in several business ventures, some of which were funded by defendant, but none of which were remunerative. After 2008, he did not contribute economically, either to defendant's business or the parties' living expenses, except for a deposit of $200,000 into the AWI account from an inheritance he received in 2011. However, plaintiff was primarily responsible for managing the payment of the family's expenses.
Both parties participated in parenting their daughter, with the assistance of a nanny five days per week. The nanny also accompanied the family on trips to Aspen and Nantucket. The trial court found that there was "some evidence" that plaintiff helped care for the child when defendant was traveling without the child, and on Saturdays from September to June when defendant was at work, which included taking the child to classes and skiing on Saturdays in the winter, starting in 2011. Plaintiff took the child to school and activities when the nanny did not. However, the trial court also found that plaintiff "engaged in conduct that was potentially detrimental" to the child when defendant was away on business.
Defendant testified that, through AWI, she managed approximately 30 artists and served as a broker for their art, for which AWI received 40 to 50% of the proceeds of art sales. She further testified that she also bought art for AWI as investments, not [*3]from the artists she represented, but, usually, from emerging artists. Defendant was the sole arbiter of what to sell from the AWI inventory, and she generally only sold AWI art inventory to raise funds to buy other art or to pay expenses, as the business did not carry much cash and had enormous overhead costs.
Plaintiff attended events with defendant related to her gallery, but he was not involved with the day-to-day work of defendant's business. He had limited knowledge of defendant's acquisition of art, the art's value, or how it was stored, and he played no role in defendant's purchases or sales of art or her representation of artists. The trial court also found that there was "some evidence that he was detrimental to some aspects of her business," including, for example, that he had engaged in inappropriate behavior with a collector, AWI staff members and an artist whom defendant represented.
The trial court found that plaintiff's contributions to the marriage, both economic and non-economic, began to diminish beginning in or about 2008, to the extent that, after 2012 or 2013, "he failed to make any significant contributions to the marriage."
Before the marriage, in or about 2002, defendant identified a piece of land in the Chelsea neighborhood that she wished to purchase for her gallery (the Chelsea property). She executed the contract of sale for the Chelsea property on November 5, 2004, and the closing took place in January 2005. The Chelsea property was owned by an LLC formed for that purpose on October 28, 2004. Initially, defendant owned 100% of the LLC, but in 2011, she transferred 20% of it to a trust of which the parties' daughter is the beneficiary. While defendant used some of her separate property funds to acquire the property, she also used some marital funds to pay the costs of the construction and renovation. Defendant opened the new gallery in September 2006 in the extensively renovated space. In 2007, construction was completed on the residential portion of the building, which then became the marital residence. The Chelsea property also contained a mezzanine where guests stayed, including artists while installing their shows in the gallery. The majority of the Chelsea property was used by the gallery, and the residence occupied approximately 10% of the building. AWI had a lease with the LLC pursuant to which it paid rent to the LLC. The parties resided in the residential portion of the building rent-free. The parties disputed the degree to which plaintiff was involved in the construction of the building, beyond attending some construction meetings.
Analysis
Plaintiff's Inapposite Global Objections to the Distributive Award
Plaintiff objects globally to the trial court's distribution of assets on the grounds that he was awarded only 10.2% of the marital estate, according to his calculations. Although we modify some aspects of the trial court's distributive award in plaintiff's favor, we find that his global objections [*4]fail in two important respects.
First, plaintiff complains that the overall distribution of assets to him constitutes a de minimis percentage of the parties' total assets. However, equitable distribution does not require equal distributions. More precisely, our precedents provide courts with a great deal of discretion in distributing assets, and, in particular, support a wide range of appropriate distributions depending on the nature of each asset, whether it was acquired during the marriage or before, and the contributions of each party to the appreciation in value, if any, of the asset. Specifically, and of great relevance to this case, our precedents support a smaller percentage distribution to the nontitled spouse of the value of a business created and managed by the titled spouse. Accordingly, reducing equitable distribution to a single fraction reflecting the value of the assets distributed divided by the total amount of marital assets does not accurately represent the equity of the distribution. Rather, in a situation like this, where the complex marital estate is composed of multiple assets of varying natures, many of which cannot be distributed in kind, the court must carefully consider the equitable distribution of each asset based on the applicable statutory equitable distribution factors, which frequently leads to an unequal distribution that is nevertheless equitable (see Arvantides v Arvantides, 64 NY2d 1033 [1985]; Cotton v Roedelbronn, 170 AD3d 595, 595-596 [1st Dept 2019]; Klauer v Abeliovich, 149 AD3d 617, 622-623 [1st Dept 2017]). In particular, as defendant's business was the parties' largest asset, the application of the general principle that business assets are generally less evenly divided than other assets results in a greater overall distribution in defendant's favor.
Second, plaintiff's analysis fails to account for the tax consequences that defendant will bear in paying plaintiff his distributive award (see Pappas v Pappas, 140 AD3d at 840). For example, in order for defendant to pay plaintiff our increased award to him of 15% of the marital portion of AWI, she will have to liquidate approximately 30% of the marital portion of AWI's value, as discussed more fully below. Accordingly, taking into account the tax impact of the distribution to plaintiff, defendant will retain not 85% of the marital value of AWI, but closer to 70%. Although the trial court recognized that it was "a virtual certainty that defendant will have to sell assets in order to satisfy the equitable distribution award," it did not quantify the resulting tax impact on defendant of the payments she must make to plaintiff. Based on the record, we have estimated the tax effect, which demonstrates that plaintiff has understated the actual percentage of the net marital assets that he will receive. On the other hand, we affirm the distribution to plaintiff of 50% of those marital assets that can be distributed in kind without any tax impact, including the [*5]value of the parties' vehicles, wine collection, bank accounts, and investment and retirement funds.
In making its award, the trial court found:
"It would be inequitable to require defendant to bear the entire tax burden of selling assets to satisfy an equitable distribution award, as that diminishes the share of the marital property to her. . . . [I]t is a virtual certainty that defendant will have to sell assets in order to satisfy the equitable distribution award. The award of equitable distribution is structured in consideration of the reality that defendant will have to sell assets and in consideration of the tax consequences that defendant will bear in having to sell art to satisfy the award."
Plaintiff does not directly dispute defendant's argument that, in connection with the sale of art to raise funds to pay plaintiff his distributive award, "[t]he proceeds she receives from the sale of the art will be attributed to her at the higher ordinary income tax rate, causing her significant tax liabilities." However, he claims that the argument is not supported by the evidence. We find to the contrary.
Defendant's accountant testified that AWI is structured as a "pass-through" entity, so that the income of AWI from the sale of art is reflected on defendant's personal tax return. He further testified that she would pay, in connection with the sale of art owned by AWI, the highest marginal tax rate, which is 37% on federal taxes and 12% on state taxes. He testified that if she sold art from her personal collection that she had held for at least one year, she would pay federal capital gains tax of 31.8% and state tax of 12%. Similarly, the trial court correctly found that the operating agreement of M&E, LLC (M&E) provides that defendant recoups her cost basis and is responsible for 100% of the expenses and taxes when art owned by M & E is sold. The parties' tax returns in evidence also support the tax rates to which defendant's accountant testified.
Given the tax liability that defendant incurs when she sells art, she will receive approximately 51% to 56% of the sales price after taxes (depending on whether the art is from her personal collection). Therefore, in order for defendant to pay plaintiff $1,000,000, she must sell art worth approximately $1,786,000 if the art is from her personal collection and art worth approximately $1,961,000 if the art is owned by AWI. In effect, in order for her to pay him a distributive award of 15% of the marital value of AWI, she will have to sell art worth approximately 29% of the marital value of AWI. Under these circumstances, it is appropriate to award plaintiff a smaller distribution of assets for which defendant will have to sell property awarded to her in equitable distribution in order to pay him.[FN1] Art Valuation
The trial court appropriately adopted the methodology to appraise the artwork at issue used by plaintiff's expert and the neutral expert appointed by the court, both of whom testified that [*6]including the "buyer's premium" was the industry standard in appraising the fair market value of art and conformed with IRS regulations. Moreover, although defendant argued that, as a gallerist, she did not sell art at auction, her testimony revealed otherwise. Accordingly, we afford the trial court's determination deference (see Peritore v Peritore, 66 AD3d 750, 752 [1st Dept 2009]; see generally Amodio v Amodio, 70 NY2d 5, 7 [1987]). AWI
Contrary to defendant's contention, plaintiff met his burden to show that the appreciation in value of defendant's pre-marital business, AWI, during the marriage constituted marital property subject to distribution (see Larowitz v Lebetkin, 170 AD3d 578, 579 [1st Dept 2019]).[FN2] The record, including defendant's own testimony, supports the trial court's determination that the appreciation was due to defendant's active efforts (see Price v Price, 69 NY2d 8, 17-18 [1986]) and that there was "some nexus" between plaintiff's limited indirect contributions as a supportive spouse and active parent, at least in the early years of the marriage, and the success of defendant's business (see Hartog v Hartog, 85 NY2d 36, 46 [1995]; see also Domestic Relations Law § 236[B][1][d][3]). Contrary to defendant's argument, the nontitled spouse is not required to quantify the connection between the titled spouse's efforts and the increase in value of separate property during the marriage "with mathematical, causative or analytical precision" (Hartog, 85 NY2d at 47).
An award to plaintiff of significantly less than half of the marital portion of AWI is justified by the following facts: defendant started her business years before she met plaintiff; plaintiff was not involved with defendant's acquisition or sale of art; plaintiff's conduct was at times problematic and even a hindrance to defendant's business success; plaintiff's contributions to the marriage diminished over time; and defendant will bear substantial tax consequences when she sells art to pay plaintiff a distributive award (see Domestic Relations Law § 236[B][5][d][7], [8], [11]; see also Cotton, 170 AD3d at 596). However, we find that the trial court's distribution of only 7.5% of the marital appreciation in AWI to plaintiff was an improvident exercise of discretion, given the court's findings that plaintiff made indirect contributions to defendant's business as a supportive spouse and parent, at least in the early years of the marriage, and deposited $200,000 into the AWI account from an inheritance he received in 2011. He also attended many events with her, and provided occasional assistance, particularly following Hurricane Sandy. Plaintiff concedes both that defendant's success was a consequence of "her own hard work and business and art savvy" and that "the case law is consistent that business assets are rarely distributed on an equal basis." He nevertheless argues that he should receive at least 25% of the appreciation in value of AWI, citing, inter alia, Teitler [*7]v Teitler (156 AD2d 314 [1st Dept 1989], appeal dismissed 75 NY2d 963 [1990]). However, in Teitler, the nontitled spouse provided administrative and sales services to the business. Considering all of the circumstances, we find that plaintiff's share of AWI's appreciation during the marriage should be 15%, or $3,486,821 (see e.g. Cotton, 170 AD3d at 596; Gering v Tavano, 50 AD3d 299, 301 [1st Dept 2008], lv denied 11 NY3d 707 [2008]). M&E and Defendant's Personal Art Collection
With respect to M&E, an entity established during the marriage and partly owned by a trust benefiting the parties' daughter, the award of 10% of the marital value to the plaintiff was an improvident exercise of discretion; instead, we find that his share should be 15%. Defendant's role as sole arbiter of the acquisition and disposition of artwork held by M&E, plaintiff's lack of any direct contribution to this asset, and his diminishing indirect contributions as a spouse and parent over time, as well as the tax consequences to defendant from selling assets to pay plaintiff's distributive award justify a relatively small award to plaintiff of this asset (see Klauer v Abeliovich, 149 AD3d 617, 625 [1st Dept 2017], supra). However, the trial court found that plaintiff made indirect contributions as a spouse and parent in the early years of the marriage. We further find that defendant is entitled to a separate property credit for art that was gifted to her, valued at $991,400, as detailed in tax returns (see Domestic Relations Law § 236B[1][d][1]). The stipulated value of the art held by M&E, taking into account the buyer's premium, is $10,529,638. After deducting defendant's separate property credit and the 33 1/3% interest of the trust benefitting the parties' child, the amount subject to equitable distribution is $6,359,143, of which plaintiff is entitled to 15%, 0r $953,871.45.
For similar reasons, we find that the award to plaintiff of 10% of the value of defendant's personal art collection was an improvident exercise of discretion and that the distribution to him should be 15%, or $215,812.50, with the buyer's premium (see Klauer, 149 AD3d 617, 624). Real Estate
The trial court's award to plaintiff of only 10% of the marital value of the Chelsea property, which houses defendant's art gallery and the parties' former marital residence, was an improvident exercise of discretion. The award did not give sufficient weight to the facts that marital funds were used to construct, renovate, maintain, and operate the building and that plaintiff was involved during the construction process. On the other hand, after 2008, plaintiff ceased to earn an income and therefore did not contribute financially, and the parties did not pay rent or a mortgage to live in the marital residence since it was situated in a commercially zoned space. Indeed, plaintiff continued to benefit from this asset long after the May 2015 cutoff for marital assets, since after he vacated the marital residence [*8]in January 2015, he moved into a separate section of the building, where he lived until April 2016. Considering all of these facts, we find that plaintiff is entitled to 30% of the marital value, or $3,708,233.28 (see Klauer, 149 AD3d at 622; Guha v Guha, 61 AD3d 634, 634 [2d Dept 2009]).
Similarly, we find that plaintiff is entitled to 40% of the marital value of the parties' condominium in Aspen, instead of the 20% awarded by the trial court. The parties purchased and renovated this property during the marriage. The record shows that, although plaintiff was not earning income to contribute financially, he paid the bills associated with the property and handled the occasional summer rental.
The trial court properly awarded 100% of the Nantucket property to defendant since it was her separate property. Oddly, plaintiff complains about this aspect of the decision even though he proposed it in his posttrial brief.
Life Insurance, Vehicles and Club Memberships
We find that the trial court improperly awarded 20% of the cash surrender value of the AXA, Inc. life insurance policy to plaintiff. The trial court found that there was no evidence that marital funds were used to pay any premiums on this pre-marital policy benefitting the parties' daughter, and plaintiff admitted that none of his income was used to pay premiums. Accordingly, the policy remains defendant's separate property, and plaintiff is not entitled to a distribution of its cash surrender value (see Gordon v Anderson, 179 AD3d 402, 403 [1st Dept 2020]).
The trial court providently exercised its discretion in awarding plaintiff 50% of the value of the parties' vehicles and the cost of their club membership fees. Defendant's use of the cash proceeds from the sale of her separate property art to help fund these purchases does not render them her separate property, because those funds were commingled with marital funds in her account and used for the parties' joint benefit (see generally Mahoney-Buntzman v Buntzman, 12 NY3d 415, 421 [2009]).
Payment Schedule and Attorneys' Fees
The court providently exercised its discretion in giving defendant four years to pay plaintiff his distributive award of the non-liquid assets, at 3% postjudgment interest, and 60 days to pay him his share of liquid assets, given the illiquid nature of the assets to be sold, the related tax consequences, and the effect of the pandemic on the economy in general and the art market in particular, of which the trial court took judicial notice (see Ralis v Ralis, 146 AD3d 831, 832 [2d Dept 2017]; Hamroff v Hamroff, 35 AD3d 365, 366 [2d Dept 2006]). In addition, plaintiff proposed in his posttrial brief that defendant be given four years to pay the distributive award, after making an initial payment to him equal to one-third of the full distributive award.
The trial court appropriately exercised its discretionary power to award reasonable counsel fees under Domestic Relations Law § 237(a), considering the [*9]particular equities and circumstances of this case, including the relative merits of the parties' positions and their respective financial positions (see DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]). We note that plaintiff will have ample funds from the equitable distribution award with which to pay his attorneys (see Wyser-Pratte v Wyser-Pratte, 68 AD3d 624, 626 [1st Dept 2009]).
We have considered the parties' remaining arguments for affirmative relief and find them unavailing.
Accordingly, the judgment of divorce of the Supreme Court, New York County (Kelly O'Neill Levy, J.), entered January 14, 2021, after a nonjury trial, to the extent appealed from as limited by the briefs, valuing the subject art work by including the "buyer's premium," awarding plaintiff 7.5% of the appreciation in value of defendant's business, Art Works Inc., during the marriage, 10% of the marital value of M&E, LLC, without awarding defendant a separate property credit, 10% of the marital value of the real property located in the Chelsea propert, 20% of the marital value of the parties' condominium in Aspen, Colorado, 20% of the appreciation in the cash surrender value of defendant's AXA life insurance policy, 10% of the marital value of defendant's personal art collection, and 50% of the remaining assets, including the value of the parties' club memberships, vehicles, wine collection, bank accounts, and investment and retirement funds, directing defendant to pay plaintiff his equitable share of illiquid assets within four years of judgment at 3% interest, and awarding plaintiff $320,000 in counsel fees, should be modified, on the law and the facts, to award plaintiff 15% of the marital appreciation of Art Works Inc., 15% of the marital value of M&E LLC after awarding defendant a separate property credit of $991,400, 30% of the marital value of the Chelsea property, 40% of the marital value of the condominium in Aspen, Colorado, 0% of the appreciation in the cash surrender value of defendant's AXA life insurance policy, and 15% of the marital value of defendant's personal art collection, and otherwise affirmed, without costs. The appeal from the order of the same court (Marilyn T. Sugarman, Special Referee) entered on or about October 9, 2020, should be dismissed, without costs, as subsumed in the appeal from the judgment.
Judgment of divorce, Supreme Court, New York County (Kelly O'Neill Levy, J.), entered January 14, 2021, modified, on the law and the facts, to award plaintiff 15% of the marital appreciation of Art Works Inc., 15% of the marital value of M&E LLC after awarding defendant a separate property credit of $991,400, 30% of the marital value of the Chelsea property, 40% of the marital value of the condominium in Aspen, Colorado, 0% of the appreciation in the cash surrender value of defendant's AXA life insurance policy, and 15% of the marital value of defendant's personal art collection, and otherwise affirmed, without costs. Order, same court[*10](Marilyn T. Sugarman, Special Referee) entered on or about October 9, 2020, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Gesmer, J. All concur.
Kapnick, J.P., Webber, Gesmer, Scarpulla, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 26, 2022



Footnotes

Footnote 1: We also reject plaintiff's argument that defendant could avoid this tax issue by selling the Nantucket residence or the Aspen condominium to pay his distributive award. The Nantucket residence, which the trial court found was not marital property because defendant acquired it before the marriage, is owned 20% by the parties' daughter through a trust. The Aspen condominium is owned 32% by the parties' daughter through a trust. Accordingly, the sale of these assets to pay plaintiff's distributive award would be both impractical and inappropriate.
Footnote 2: We note that the trial court cited to Larowitz for the proposition that a distribution of 5% of the increase in value of separate property during the marriage in that case was supported by the parties' relative contributions. However, the distribution in Larowitz was also a result of the non-titled spouse's failure to meet his burden to demonstrate that the increase in value during the marriage was due more than a small degree to the titled spouse's active efforts, and not to market forces or the efforts of others (170 AD3d at 579).